BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
ELAINE A. RYAN (*To be Admitted Pro Hac Vice*)
PATRICIA N. SYVERSON (CA SBN 203111)
LINDSEY M. GOMEZ-GRAY (*To be Admitted Pro Hac Vice*)
2325 E. Camelback Rd. Suite 300
Phoenix, AZ 85016
eryan@bffb.com
psyverson@bffb.com
Telephone: (602) 274-1100

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Manfred P. Muecke (CA SBN 222893)
600 W. Broadway, Suite 900
San Diego, California 92101
mmuecke@bffb.com
Telephone: (619) 756-7748

STEWART M. WELTMAN, LLC
Stewart M. Weltman (*To be Admitted Pro Hac Vice*)
53 W. Jackson Suite 364
Chicago, IL 60604
sweltman@weltmanlawfirm.com
Telephone: (312) 588-5033

(Additional counsel appear on signature page)

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATIANA KOROLSHTEYN, on behalf of herself and all others similarly situated, | Case No.: |
| | **CLASS ACTION COMPLAINT FOR:** |
| Plaintiff, | |
| v. | 1.   VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*; and |
| COSTCO WHOLESALE CORPORATION, | 2.   VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750 *et seq.* |
| Defendant. | **DEMAND FOR JURY TRIAL** |

Class Action Complaint

Plaintiff Tatiana Korolshteyn ("Plaintiff"), by and through her attorneys, brings this action on behalf of herself and all other similarly situated consumers against Defendant Costco Wholesale Corporation ("Defendant"), and alleges as follows:

## NATURE OF ACTION

1.     Defendant manufactures, markets, sells and distributes TruNature Ginkgo Biloba with Vinpocetine ("TruNature Ginkgo" or the "Product").[1]  Through an extensive, widespread, comprehensive and uniform nationwide marketing campaign, Defendant falsely represents on the front of each and every TruNature Ginkgo label that the Product "supports alertness & memory" and on the side of each and every label that "Ginkgo Biloba can help with mental clarity and memory" and "it also helps maintain healthy blood flow to the brain to assist mental clarity and memory, especially occasional mild memory problems associated with aging" (collectively "the mental clarity, memory and alertness representations").

2.     In truth, Defendant's TruNature Ginkgo does not provide the represented mental clarity, memory or alertness benefits.  The clear weight of the credible scientific evidence and the consensus in the scientific community among experts in the field, based upon numerous well-controlled clinical studies ("RCTs"), is that ginkgo biloba and vinpocetine supplementation does not provide any mental clarity, memory or mental alertness benefits.  As a result, Defendant's mental clarity, memory and alertness representations are false, misleading, and reasonably likely to deceive the public.

3.     When a manufacturer, like Defendant here, makes representations about a product purporting to provide health benefits, the reasonable consumer rightfully believes that the manufacturer, being in a greater position of knowledge,

---

[1] Plaintiff reserves the right to add additional products upon the completion of discovery.

has the scientific substantiation to back up its health claims.  Where, as here, Defendant does not have the substantiation to back up the representations it makes about its product, the representations are, at a minimum, deceptive, misleading or both.  As a result, the mental clarity, memory and alertness representations regarding TruNature Ginkgo are also misleading and deceptive.

4.      As such, separate and apart from their falsity, all of Defendant's representations about TruNature Ginkgo are independently actionable as being deceptive, misleading or both because Defendant lacks any credible scientific substantiation for these representations.

5.      Defendant's mental clarity, memory and alertness representations are also unlawful.  TruNature Ginkgo is a dietary supplement.  21 U.S.C. § 321(g)(d). Dietary supplements are regulated under the Dietary Supplement Health and Education Act of 1994 (DSHEA).  FDA approval is not required before producing or selling a dietary supplement.  However, all health benefit claims on the product package and label, must be truthful and not misleading. With regard to each of the representations Defendant makes about TruNature Ginkgo, this means that Defendant is required to make sure they are truthful and not misleading.  This includes the following representations: "supports alertness & memory"; "Ginkgo Biloba can help with mental clarity and memory"; and "It also helps maintain healthy blood flow to the brain to assist mental clarity and memory, especially occasional mild memory problems associated with aging".

6.      In order to be truthful and not misleading, dietary supplement health benefit claims must be substantiated by competent and reliable scientific evidence. 21 U.S.C. §321(r)(6)(b); Guidance for Industry: Substantiation for Dietary Supplement Claims Made Under Section 403(r) (6) of the Federal Food, Drug, and Cosmetic Act, ("FDA Guidance of Industry"), Ex. A.

7.      Under DSHEA, competent and reliable scientific evidence is defined

as: "tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results." FDA Guidance of Industry, Ex. A.

8.     Experts in ginkgo supplementation, as well as experts in other substances that purport to provide human health benefits, deem the only credible scientific evidence to substantiate human health benefit claims, such as those at issue here, is evidence from high quality randomized controlled clinical trials ("RCTs") (hereafter "competent and reliable evidence"). No such RCTs exist to substantiate the mental clarity, memory and alertness benefits as the labeling, either expressly or impliedly, represents that TruNature Ginkgo provides.

9.     Because there is no competent and reliable evidence that TruNature Ginkgo provides mental clarity, memory or mental alertness benefits, Defendant is selling a dietary supplement in violation of federal law, DSHEA, and California's Sherman Act.

10.     In summary, Defendant's mental clarity, memory and alertness representations are both:  (1) false, because the weight of the scientific evidence from RCTs is that neither gingko biloba nor vinpocetine supplements provide these benefits; and (2) unlawful, because there is no competent and reliable evidence that gingko biloba or vinpocetine provide these benefits.

11.     Defendant has employed numerous methods to convey its uniform, false, misleading, deceptive and unlawful mental clarity, memory or mental alertness representations, including the front of the Product's packaging and labeling where it cannot be missed by consumers

12.     As a result of Defendant's deceptive mental clarity, memory and alertness representations, consumers – including Plaintiff and members of the

proposed Class – have purchased TruNature Ginkgo that does not perform as advertised.

13.   Plaintiff brings this action on behalf of herself and other similarly situated consumers who have purchased TruNature Ginkgo to halt the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Product.  Based on violations of the state unfair competition laws (described below), Plaintiff seeks injunctive and restitutionary relief for consumers who purchased Defendant's TruNature Ginkgo product.

14.   Plaintiff also brings this action on behalf of herself and other similarly situated California consumers who have purchased TruNature Ginkgo, under the "unlawful" prong of the UCL. Plaintiff seeks to halt Defendant's unlawful sale of TruNature Ginkgo in violation of applicable FDA law and regulations and California's Sherman Act and also seeks full restitution of Plaintiff's and other California consumers' full purchase price.

## JURISDICTION AND VENUE

15.   This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some of the members of the Class are citizens of states different from Defendant.

16.   This Court has personal jurisdiction over Defendant because Defendant is authorized to do and does business in California.  Defendant has marketed, promoted, distributed and sold the TruNature Ginkgo in California and Defendant has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through its promotion, sales, distribution

and marketing within this State to render the exercise of jurisdiction by this Court permissible.

17.     Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while she resided in this judicial district.  Venue is also proper under 18 U.S.C. §1965(a) because Defendant transacts substantial business in this District.

## **PARTIES**

18.     Plaintiff Korolshteyn resides in Redwood City, California and is a resident of California.  On October 29, 2014, Plaintiff was exposed to and saw Defendant's mental clarity, memory and alertness representations by reading the front, back and sides of the TruNature Ginkgo label at a Costco in Redwood City, California.  Based on the mental clarity, memory and alertness representations on the label, Plaintiff purchased TruNature Ginkgo and paid approximately $14.69 for the bottle.  As a result, Plaintiff suffered injury in fact and lost money.  Had Plaintiff known the truth about Defendant's misrepresentations, she would not have purchased TruNature Ginkgo. Furthermore, Plaintiff was injured when she was induced to purchase a product that but for Defendant's unlawful sale of the Product would not be available for purchase.

19.     Defendant Costco Wholesale Corporation ("Costco") is a public corporation incorporated under the laws of the state of Washington.  Defendant's corporate headquarters is located at 999 Lake Drive, Issaquah, WA 98027.  Costco promotes, markets, distributes and sells TruNature Ginkgo to tens of thousands of consumers nationwide, including in California.

/ / /

/ / /

# FACTUAL ALLEGATIONS

## *TruNature Ginkgo*

20.     Defendant manufactures, distributes, markets and sells TruNature Ginkgo online and in every Costco store nationwide.   A 300 count bottle of TruNature Ginkgo retails for approximately $14.00-$16.00.   A single dose of TruNature Ginkgo contains 120 mg of Ginkgo Biloba Extract and 5 mg of vinpocetine.

21.     Throughout the relevant time period, Defendant has consistently conveyed the message to consumers that the TruNature Ginkgo "supports alertness & memory;" that "Ginkgo Biloba can help with mental clarity and memory"; and "It also helps maintain healthy blood flow to the brain to assist mental clarity and memory, especially occasional mild memory problems associated with aging".   It does not.   Defendant's mental clarity, memory and alertness representations are false, misleading and deceptive.

22.     Each and every consumer who purchases TruNature Ginkgo is exposed to these deceptive mental clarity, memory and alertness representations, which prominently appear on the front and side of each bottle.

/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /

**FRONT**



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SIDE**



*Scientific Studies Confirm that TruNature Ginkgo is Not Effective*

23.     Despite Defendant's advertising claims that the Product provides

mental clarity, memory and alertness benefits, neither ginkgo biloba nor vinpocetine provide these benefits.   The Product provides no benefit to consumers.

24.   The scientific evidence, from RCTs, demonstrates that ginkgo biloba supplementation does not contribute to improved mental clarity, memory or alertness for anyone – no matter their age, gender or other personal characteristics – as the Product's packaging and labeling proclaims. To the contrary, the weight of scientific evidence demonstrates that ginkgo biloba supplements do not provide any mental clarity, memory or alertness benefits.

25.   To evaluate the overall weight of scientific evidence regarding a particular substance, experts in the field also perform systematic reviews of RCTs.   They also perform what are called meta-analyses, where they combine the results of numerous RCTs to statistically evaluate the overall weight of the scientific evidence regarding a particular substance. In this regard, two systematic reviews published in 2002 and 2007, and one meta-analyses published in 2012, each concluded that ginkgo biloba supplements have no positive effect on cognitive function in healthy individuals.

26.   For example, in a 2002 review of placebo-controlled, double blind trials of the effect of ginkgo biloba on cognitive function in healthy subjects, Canter & Ernst concluded, "[t]he use of Ginkgo biloba as a 'smart' drug cannot be recommended on the basis of the evidence available to date, and there is a particular need for further long-term trials with healthy subjects." *See* Canter & Ernst, *Gingko biloba: a smart drug? A systematic review of controlled trials of the cognitive effects of ginkgo biloba extracts in healthy people*, 36 Hum. Psychopharmacology Clin. Exp. 108 (2002).

27.   In a 2007 follow-up review of clinical studies regarding whether ginkgo biloba "boosts cognitive performance in healthy people with normal

Class Action Complaint

cognitive function," Canter & Ernst concluded, ginkgo biloba "does not enhance cognitive function in the normal and healthy" and "[t]he collated evidence from 15 randomized clinical trials provides no convincing evidence that G. biloba extracts ingested either as a single dose or over a longer period has a positive effect on any aspect of cognitive performance in healthy people under the age of 60." The evidence of a lack of a cognitive or mental benefit from gingko biloba was so strong that the authors concluded, "We believe that there is little to be gained from further research designed to establish whether or not there is a nootropic effect of G. biloba in healthy subjects." *See* Canter & Ernst, *Gingko biloba is not a smart drug: an updated systematic review of randomized clinical trials testing nootropic effects of G. biloba extracts in healthy people*, 22 *Hum. Psychopharmacology Clin. Exp.* 265-275 (2007).

28.   And, in their 2012 meta-analysis ("examining the published body of research relating to the specific cognitive enhancing properties of G. biloba in healthy individuals"), conducted "to examine whether Ginkgo biloba enhances cognitive function in healthy adults", Laws et al. concluded, "We report that G. biloba had no ascertainable positive effects on a range of targeted cognitive functions in healthy individuals." As the authors noted, "The key findings from this meta-analysis are that G. biloba has no significant impact on memory, executive function or attention with all effect sizes non-significant and effectively at zero" and that "Our lack of support for the nootropic qualities of G. biloba accords with the conclusions of previous systematic qualitative reviews (Canter & Ernst 2007)…" And finally, "To conclude, we found no evidence that G. biloba improves memory, executive or attentional functioning in healthy individuals." Laws et al., *Is Gingko biloba a cognitive enhancer in healthy individuals?  A meta-analysis*, 27 Hum. Psychopharmacology Clin. Exp. 527-533 (2012).

29.    With respect to healthy people over the age of 60, after conducting a controlled clinical trial involving 230 subjects older than 60 years to evaluate whether gingko biloba "improves memory in elderly adults," Solomon et al. concluded that the data from their study "suggest that when taken following manufacturer's instructions, ginkgo provides no measurable benefit in memory or related cognitive function to adults with healthy cognitive function." Solomon, et al., *Gingko for Memory Enhancement – A Randomized Controlled Trial*, 288(7) JAMA 835-40 (2002).    "In summary, this does not support the manufacturer's claims of benefits of ginkgo on learning and memory." *Id.*

30.    In 2002, The Cleveland Clinic Center likewise concluded that "the claims that Ginkgo biloba has beneficial effects on learning and memory are not supported by the literature."

31.    Plaintiff, through her counsel and her counsel's consulting experts, has conducted a comprehensive search of the published literature on vinpocetine. No published reports of RCTs for vinpocetine, in the amounts contained in TruNature Ginkgo, were found supportive of the mental clarity, memory or alertness representations.   And, a 2002 Cochrane Review concluded that the evidence does not support the clinical use of vinpocetine for cognitive health benefits.   *See* Szatmari SZ, Whitehouse PJ: *Vinpocetine for cognitive impairment and dementia*, Cochrane Database Syst Rev 2003, 1:CD003119.

***Defendant is Unlawfully Selling TruNature Ginkgo in Violation of Federal and State Law***

32.    TruNature Ginkgo is a dietary supplement and governed by DSHEA.

33.    DSHEA permits the makers of dietary supplements to make claims as to how their supplement affects the structure or function of the body without obtaining prior FDA approval provided certain requirements are met. 21 U.S.C.

§§342, 343. One of these requirements is that the manufacturer must have substantiation that the claims are truthful and not misleading. 21 U.S.C. §343(r)(6)(B).

34.     California's Sherman Food, Drug, and Cosmetic Law ("Sherman FD&C") (California's Health & Safety Code §§109875, et. seq.), parallels the FDCA in material part and adopts the Federal requirements for dietary supplements, including that dietary supplement claims be made in accordance with Section 403(r)(6) of the FDCA. Cal. Health & Safety Code § 110100(a).

35.     The FDA has adopted the FTC's substantiation standard of "competent and reliable scientific evidence" for dietary supplements as described above.

36.     Competent and reliable scientific evidence is defined as: "tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results."   FDA Guidance of Industry, Ex. A.  For products such as TruNature Ginkgo, adequate substantiation, as required by experts in the relevant area, consists of high quality RCTs – particularly when representations regarding mental health effects is the subject matter.

37.     There are no reliable or high quality RCTs substantiating any of the representations made by Defendant about TruNature Ginkgo.

38.     By selling TruNature Ginkgo without the prerequisite competent and reliable scientific evidence/substantiation for these representations, Defendant has violated DSHEA and the Sherman Law.

***The Impact of Defendant's Wrongful Conduct***

39.     Defendant continues to unequivocally, falsely, deceptively,

misleadingly and unlawfully convey through its advertising and labeling one uniform message: TruNature Ginkgo provides mental clarity, memory and alertness benefits.

40.     Plaintiff and Class members have been and will continue to be deceived or misled by Defendant's deceptive mental clarity, memory and alertness representations.  Plaintiff purchased TruNature Ginkgo during the Class period and in doing so, read and considered the Product's label and based her decision to purchase the Product on the mental clarity, memory and alertness representations on the Product packaging.  Defendant's mental clarity, memory and alertness representations were a material factor in influencing Plaintiff's decision to purchase and consume the Product. Plaintiff would not have purchased the Product had she known that Defendant's mental clarity, memory and alertness representations were false and misleading and in contradiction of the weight of the scientific evidence, which has found that ginkgo and vinpocetine supplementation do not provide mental clarity, memory and alertness benefits.  And, Plaintiff and the class would not have purchased TruNature Ginkgo if it had not been unlawfully said by Defendant.

41.     As a result, Plaintiff and the Class members have been damaged in their purchases of the TruNature Ginkgo.

## CLASS ALLEGATIONS

42.     Plaintiff brings this action on behalf of herself and all other similarly situated consumers pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

/ /

/ /

/ /

/ /

**Multi-State Class Action**
All consumers who, within the applicable statute of limitations period, purchased TruNature Ginkgo in California and states with similar laws.[2]

Excluded from this Class is Defendant and its officers, directors and employees and those who purchased TruNature Ginkgo for the purpose of resale.

43.     In the alternative, Plaintiff seeks certification of the following class:

**California-Only Class**
All consumers who, within the applicable statute of limitations period, purchased TruNature Ginkgo in California.

Excluded from this Class is Defendant and its officers, directors and employees and those who purchased TruNature Ginkgo for the purpose of resale.

44.     Members of the Class are so numerous and geographically dispersed that joinder of all Class members is impracticable.   Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members.   The precise number of Class members is unknown to Plaintiff, but ascertainable.

45.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members.   The common legal and factual questions include, but are not limited to, the following:

- whether the claims discussed above are true, or are misleading, or objectively reasonably likely to deceive;

---

[2]    While discovery may alter the following, Plaintiff preliminarily avers that Defendant violated the laws prohibiting unfair and deceptive trade practices of the states and territories wherein Class members reside, including:  Cal. Bus. & Prof. Code §17200 et seq.; California Civil Code §1750 et seq.; Fla. Stat. §501.201 et seq.; Fla. Stat. §§817.06; 815 Ill. Comp. Stat. 502/1, et seq.; Mass. Gen. Laws ch.93A et seq.; Mich. Stat. §445.901 et seq.; Minn. Stat. §8.31 et seq.; Missouri Stat. §407.010 et seq.; N.J. Rev. Stat. §56:8-1 et seq.; N.Y. Gen. Bus. Law §349 et seq.; and Wash. Rev. Code. §19.86.010 et seq.

- whether Defendant engaged in false, deceptive, or misleading conduct;

- whether Defendant engaged in the unlawful sale of a dietary supplement in violation of Federal and State law;

- whether Defendant's alleged conduct violates public policy;

- whether the alleged conduct constitutes violations of the laws asserted; and

- whether Plaintiff and Class members are entitled to appropriate remedies, including corrective advertising and injunctive relief.

46.    Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above.   Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

47.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.   Plaintiff has retained counsel competent and experienced in both consumer protection and class litigation.

48.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.   The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually.   It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them.   Furthermore, even if Class members could afford such individualized litigation, the court system could not.   Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.   Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.   By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

49.    The Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

50.    Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiff and Class members.

51.    Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and Class members.  Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

### COUNT I
**Violation of Business & Professions Code §17200,** *et seq.*
**(Applicable to the California-Only Class)**

52.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

53.    Plaintiff brings this claim individually and on behalf of the California-only Class.

54.    The Unfair Competition Law, Business & Professions Code §17200, et seq. ("UCL"), prohibits any "unlawful" business act or practice.

55.    As alleged herein, Defendant engaged in illegal conduct by unlawfully making the representations set forth above.  Because Defendant did not have adequate substantiation that the mental clarity, memory and alertness representations were truthful and not misleading Defendant has committed unlawful business practices by violating California's Sherman Food, Drug and

Cosmetic Law, California's Health & Safety Code §§ 109875 et seq. and the Food Drug and Cosmetic Act, 21 U.S.C. §§ 301, et seq.  Plaintiff and the California-only Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

56.    Plaintiff and the California-only Class suffered "injury in fact"/economic loss by spending money on a Product that, but for Defendant's illegal conduct, would not have been on the market.

57.    The FDA and Sherman Act misbranding/consumer protections are intended to ensure that any claims made about dietary supplements as defined under the FDA law and regulations to the consuming public (e.g., sold to Plaintiff and the California-only Class), are truthful and not misleading.

58.    The UCL unlawful prong is intended to hold a defendant who violates this prong accountable for its violations by, among other things, paying full compensation to purchasers who have purchased the illegally sold products.

59.    But for Defendant's unlawfully selling TruNature Ginkgo, Plaintiff and the California-only Class would never have purchased this illegal Product. As result of Defendant's illegal conduct, Plaintiff and the California-only Class have suffered injury/economic loss and are entitled to a full refund of their purchase price. Unless restrained and enjoined, Defendant will continue to engage in the illegal sale of the Product. Accordingly, injunctive relief is appropriate

60.    Plaintiff, on behalf of herself, all other similarly situated California consumers, and the general public, seeks restitution of all money they paid for Defendant's illegally sold Product, an injunction prohibiting Defendant from continuing to sell the Product with the false representations set forth above, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

**COUNT II**

**Violations of the Consumers Legal Remedies Act – Civil Code §1750 *et seq.*
(Applicable to the Multi-State or California-Only Class)**

61.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

62.     Plaintiff brings this claim individually and on behalf of the Class.

63.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* (the "Act") and similar laws in other states.

64.     Plaintiff is a consumer as defined by California Civil Code §1761(d). Defendant's TruNature Ginkgo is a "good" within the meaning of the Act.

65.     Defendant violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of TruNature Ginkgo:

(5)     Representing that [TruNature Ginkgo has] . . . approval, characteristics, . . . uses [and] benefits . . . which [it does] not have . . . .

\*     \*     \*

(7)     Representing that [TruNature Ginkgo is] of a particular standard, quality or grade . . . if [it is] of another.

\*     \*     \*

(9)     Advertising goods . . . with intent not to sell them as advertised.

\*     \*     \*

(16)    Representing that [TruNature Ginkgo has] been supplied in accordance with a previous representation when [it has] not.

66.     Defendant violated the Act by making the false, misleading and deceptive representations on each and every Product package.

67.     As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendant's conduct because she purchased TruNature Ginkgo in reliance on Defendant's false representations.

68.     Plaintiff and other members of the Class have in fact been deceived as a result of their reliance on Defendant's material false representations described above. This reliance has caused harm to Plaintiff and other members of the Class who each purchased TruNature Ginkgo.  Plaintiff and the other Class members have suffered injury in fact and lost money as a result of these deceptive and fraudulent practices.

69.     Pursuant to California Civil Code §1782(d), Plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

70.     Pursuant to §1782 of the Act, Plaintiff notified Defendant in writing by certified mail of the particular violations of §1770 of the Act and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act.  A copy of the letter is attached hereto as Exhibit B.

71.     If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act, Plaintiff will amend this Complaint to add claims for actual, punitive and statutory damages, as appropriate.

72.     Defendant's conduct is fraudulent, wanton and malicious.

73.     Pursuant to §1780(d) of the Act, attached hereto as Exhibit C is the affidavit showing that this action has been commenced in the proper forum.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

      A.     Certifying the Class as requested herein;

      B.     Awarding restitution and disgorgement of Defendant's revenues to Plaintiff and the proposed Class members;

      C.     Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

      D.     Ordering Defendant to engage in a corrective advertising campaign;

      E.     Awarding attorneys' fees and costs; and

      F.     Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial of her claims by jury to the extent authorized by law.

Dated: December 15, 2014

                    BONNETT, FAIRBOURN, FRIEDMAN
                      & BALINT, P.C.

                    */s/ Patricia N. Syverson*
                    Elaine A. Ryan (*To be Admitted Pro Hac Vice*)
                    Patricia N. Syverson (203111)
                    Lindsey M. Gomez-Gray (*To be Admitted Pro Hac Vice*)
                    2325 E. Camelback Rd., Suite 300
                    Phoenix, AZ 85016
                    eryan@bffb.com
                    psyverson@bffb.com
                    Telephone:  (602) 274-1100

                    BONNETT, FAIRBOURN, FRIEDMAN
                    & BALINT, P.C.
                    Manfred P. Muecke (222893)
                    600 W. Broadway, Suite 900
                    San Diego, California 92101
                    mmuecke@bffb.com
                    Telephone:  (619) 756-7748

                    STEWART M. WELTMAN, LLC
                    Stewart M. Weltman (*To be Admitted Pro Hac Vice*)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

53 W. Jackson Suite 364
Chicago, IL 60604
sweltman@weltmanlawfirm.com
Telephone:  (312) 588-5033

SIPRUT PC
Joseph Siprut (*To be Admitted Pro Hac Vice*)
17 North State Street
Suite 1600
Chicago, IL  60602
Jsiprut@siprut.com
Telephone: 312.236.0000

Attorneys for Plaintiff

Class Action Complaint