1   William A. Delgado (Bar No. 222666)
2   wdelgado@willenken.com
    Megan O'Neill (Bar No. 220147)
3   moneill@willenken.com
4   WILLENKEN WILSON LOH & DELGADO LLP
    707 Wilshire Blvd., Suite 3850
5   Los Angeles, California 90017
    Telephone: (213) 955-9240
6   Facsimile:  (213) 955-9250
7
8   Attorneys for Defendants
    COSTCO WHOLESALE CORP. and
9   NBTY, INC.
10

11                  UNITED STATES DISTRICT COURT

12                 SOUTHERN DISTRICT OF CALIFORNIA

13

14  TATIANA KOROLSHTEYN, on behalf    CASE NO.: 3:15-CV-00709-CAB-RBB
15  of herself and all others similarly
    situated,                          **DEFENDANTS COSTCO**
16                                      **WHOLESALE CORPORATION**
17            Plaintiff,                **AND NBTY, INC.'S OPPOSITION**
                                        **TO PLAINTIFF TATIANA**
18  v.                                  **KOROLSHTEYN'S MOTION FOR**
                                        **CLASS CERTIFICATION**
19
    COSTCO WHOLESALE
20  CORPORATION, and NBTY, INC.         [Declarations of William A. Delgado,
                                        Keith Ugone, Susan Mitmesser, Teresa
21            Defendants.               Thompson and Edward Rosick filed
22                                      concurrently herewith]
23
24                                      Date:      TBD
                                        Time:      TBD
25                                      Judge:     Hon. Cathy Ann Bencivengo
                                        Courtroom: 4C
26
27                                      **[REDACTED VERSION]**
28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION..................................................................................1

II.     STATEMENT OF FACTS....................................................................3

        A.      A Brief History on Ginkgo Biloba and Its Uses. ....................3

        B.      Defendants and Their Products.................................................4

        C.      Defendants' Reliable Evidence on Efficacy. ...........................5

        D.      The Shortcomings of Plaintiff's Expert. ..................................5

        E.      Korolshteyn's Deposition Testimony ......................................6

        F.      Counsel's Recruitment of Plaintiff to Serve as Class
                Representative...........................................................................7

III.    LEGAL STANDARD ...........................................................................9

IV.     ARGUMENT ......................................................................................10

        A.      Plaintiff's Credibility Problems Prevent Her from Adequately
                Representing the Class............................................................10

        B.      Plaintiff Cannot Establish Commonality, Predominance or
                Superiority...............................................................................13

                1.      Whether the label was material to class members is not
                        capable of classwide resolution. ..................................15

                        a.      Consumer surveys show many class members
                                purchased ginkgo based on claims unrelated to the
                                labels at issue....................................................15

                        b.      Some class members also likely relied on
                                marketing for other ginkgo products, requiring
                                individualized inquiries. ...................................16

                2.      The proposed class contains persons who benefitted from
                        ginkgo, thus injury is incapable of classwide resolution
                        and results in an overbroad class with members who lack
                        standing. ........................................................................17

                        a.      Potential class members with memory problems
                                who purchased ginkgo suffered no injury.........18

                        b.      Satisfied customers likewise suffered no injury. ..........19

                        c.      Absent class members who suffered no injury or
                                already received refunds lack standing to sue.......20

        3.     Plaintiff has not established a workable damages model tied to liability.............................................................................21

   C.    Dissatisfied Class Members Receiving Refunds Directly from Costco Would Be a Superior Method of Resolution. ........................24

V.     CONCLUSION ...............................................................................25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Algarin v. Maybelline, LLC,*
300 F.R.D. 444 (S.D. Cal. 2014) ........................................................................... 16

*Am. Express Co. v. Italian Colors Rest.,*
—— U.S. ——, 133 S. Ct. 2304 (2013) ................................................................... 9

*Berger v. Home Depot USA, Inc.,*
741 F.3d 1061 (9th Cir. 2014) ............................................................................... 18

*Bodner v. Oreck Direct, LLC,*
2007 WL 1223777 (N.D. Cal. 2007) ............................................................... 11, 12

*Bohn v. Pharmavite, LLC,*
2013 WL 4517895 (C.D. Cal. 2013) ................................................................ 11, 12

*Brazil v. Dole Packaged Foods, LLC,*
2016 WL 5539863 (9th Cir. 2016) ......................................................................... 22

*Brazil v. Dole Packaged Foods, LLC,*
2014 WL 2466559 (N.D. Cal. May 30, 2015) ........................................................ 24

*Califano v. Yamasaki,*
442 U.S. 682 (1979) ................................................................................................. 9

*Comcast Corp. v. Behrend,*
— U.S. —, 133 S. Ct. 1426 (2013) ................................................... 9, 10, 21, 24

*Drimmer v. WD-40 Co.,*
343 F. App'x 219 (9th Cir. 2009) ........................................................................... 12

*Ellis v. Costco Wholesale Corp.,*
657 F.3d 970 (9th Cir. 2011) ................................................................................... 9

*Hanon v. Dataproducts Corp.,*
976 F.2d 497 (9th Cir. 1992) ................................................................................. 13

*Hobbs v. Brother Int'l Corp.,*
2016 WL 4734394 (C.D. Cal. 2016) ...................................................................... 13

*Hovsepian v. Apple, Inc.,*
2009 WL 5069144 (N.D. Cal. 2009) ...................................................................... 21

*In re POM Wonderful LLC,*
2014 WL 1225184 (C.D. Cal. 2014) ...................................................................... 23

*In re Vioxx Class Cases,*
180 Cal. App. 4th 116 (2009) ................................................................................. 22

*Kachi v. Natrol, Inc.,*
2014 WL 2925057 (S.D. Cal. 2014) ....................................................................... 19

*Kaplan v. Pomerantz,*
  132 F.R.D. 504 (N.D. Ill. 1990)................................................................13

*Lewis v. Casey,*
  518 U.S. 343 (1996)..................................................................................21

*London v. Wal–Stores, Inc.,*
  340 F.3d 1246 (11th Cir. 2003) ..............................................................11

*Mazza v. Am. Honda Motor Co., Inc.,*
  666 F.3d 581 (9th Cir. 2012)..................................................................20

*McKinnon v. Dollar Thrifty Auto. Grp., Inc.,*
  2015 WL 4537957 (N.D. Cal. 2015) .....................................................20

*Minkler v. Kramer Labs., Inc.,*
  2013 WL 3185552 (C.D. Cal. 2013) ...............................................16, 20

*Moheb v. Nutramax Labs. Inc.,*
  2012 WL 6951904 (C.D. Cal. 2012) ...............................................16, 19

*Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.,*
  2016 WL 5920345 (C.D. Cal. 2016) ...............................................15, 17

*Rothman v. Gen. Nutrition Corp.,*
  2011 WL 6940490 (C.D. Cal. 2011) .......................................................9

*Savino v. Computer Credit, Inc.,*
  164 F.3d 81 (2d Cir. 1998)......................................................................13

*State of Alaska v. Suburban Propane Gas Corp.,*
  123 F.3d 1317 (9th Cir. 1997) ...............................................................13

*Stearns v. Select Comfort Retail Corp.,*
  763 F. Supp. 2d 1128 (N.D. Cal. 2010) ................................................21

*Turcios v. Carma Labs., Inc.,*
  296 F.R.D. 638 (C.D. Cal. 2014) ....................................................21, 25

*Tyson Foods, Inc. v. Bouaphakeo,*
  -- U.S. --, 136 S. Ct. 1036 (2016) .........................................................20

*Valentino v. Carter-Wallace, Inc.,*
  97 F.3d 1227 (9th Cir. 1996) .................................................................10

*Wal-Mart v. Dukes,*
  564 U.S. 338 (2011).....................................................................9, 14, 17

*Wang v. Chinese Daily News, Inc.,*
  737 F.3d 538 (9th Cir. 2013) .................................................................14

*Webb v. Carter's Inc.,*
  272 F.R.D. 489 (C.D. Cal. 2011) ....................................................20, 25

*Wolph v. Acer Am. Corp.,*
  272 F.R.D. 477 (N.D. Cal. 2011)...........................................................21

*Zinser v. Accufix Research Institute, Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ............................................................... 10

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................... 9, 19

Fed. R. Civ. P. 23(b) ........................................................................... 9, 10

Fed. R. Civ. P. 23(b)(3) ............................................................ 10, 13, 21, 24

**Statutes**

Cal. Bus. & Prof Code § 17200 ("UCL") ..................................................... 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This is not a prototypical consumer lawsuit in which a plaintiff seeks an attorney because she is both unhappy with a product and unable to obtain redress on her own.  To the contrary, a very different scenario occurred here.  One of Plaintiff Tatiana Korolshteyn's ("Plaintiff") attorneys, Peter Crane, recruited her as a lead plaintiff *before* she had ever taken a single ginkgo supplement.  A longtime friend of Crane's, Plaintiff agreed—after some convincing and without ever determining for herself if ginkgo possessed cognitive health benefit—to serve as the class representative here, with the aspiration that Crane, not the class, would reap some financial benefit.

Notably, these facts did not readily appear at Plaintiff's deposition because Plaintiff originally testified she spoke to counsel *after* she had taken the ginkgo supplement and that she had *not* been encouraged to bring this lawsuit.  But then, during discovery, Plaintiff sought to conceal her initial Facebook messages with her friend/attorney that would reveal the true chronology.  The truth, however, ultimately came out: this is a putative class action manufactured by attorneys and led by a less-than-credible class representative, attacking a product with which millions of people are quite satisfied.  This is not what Rule 23 intended.  Even if Plaintiff were an adequate representative, she cannot prove her claims with classwide evidence for four other reasons.

First, Plaintiff will not be entitled to a presumption of classwide reliance because the evidence shows class members neither purchased ginkgo for a singular benefit, as Plaintiff mistakenly contends, nor based their purchasing decision exclusively on the label claims.  Rather, surveys show many potential class members purchased ginkgo due to the recommendations of doctors or others.  Other consumers may have relied on competitors' advertising of their own ginkgo

products.  Plaintiff will thus be unable to demonstrate with common proof that the product label was material to class members' purchasing decisions.

Second, Plaintiff cannot demonstrate classwide injury.  Even if all class members purchased ginkgo for the same reason, Plaintiff's claims would only be amenable to class treatment if she could show classwide injury, *i.e.*, that ginkgo does not provide cognitive benefits to *any* class members, including those with memory problems.  This she cannot show.  Numerous studies have concluded ginkgo has a wide range of benefits, including supporting mental performance and memory as well as treating cognitive impairment, dementia, headaches, tinnitus, macular degeneration, and peripheral arterial disease.  Indeed, while Plaintiff's expert focuses exclusively on heathy populations, there is ample evidence that ginkgo has an especially positive effect on impaired/diseased populations suffering from memory problems.  Because the potential class contains those who benefitted from ginkgo, classwide injury cannot be shown.  In fact, as a simple procedural matter, these uninjured class members lack Article III standing to sue, making the class impermissibly overbroad.

Third, Plaintiff's damages model, which calls for a "full refund" of the price consumers paid, is deeply and impermissibly flawed.  Despite Plaintiff's insistence that all consumers take ginkgo for one reason—brain health—the labels also state ginkgo contains antioxidants.  Surveys also show consumers purchase ginkgo for a host of other reasons ranging from "Energy" to "Weight Loss" to "Blood Pressure" to "Mood Enhancement," and consumer reviews reveal many other motivations, none of which Plaintiffs can dispute.  Plaintiff's "Full Refund" model nonetheless does not take these benefits into account or the value that should be ascribed to them, which runs contrary to California law on restitution.

Finally, because Costco has a well-known, generous return policy that allows returns at any time, as Plaintiff both noted and took advantage of in the past,

---

DEFENDANTS' OPPOSITION TO MOTION FOR
CLASS CERTIFICATION                    2              CASE NO.: 3:15-CV-00709-CAB-RBB

140545.2

the superior method of resolving this matter is not class certification but, instead, for any *unsatisfied* customers to receive a refund directly from Costco.

Because Plaintiff cannot demonstrate adequacy, commonality, typicality, predominance, superiority, or a damages model consistent with liability, Plaintiff cannot satisfy Rule 23 and class certification should be denied.

## II.   STATEMENT OF FACTS

### A.   A Brief History on Ginkgo Biloba and Its Uses.

Extracts and infusions from the leaves of the Ginkgo biloba tree have been used in traditional Chinese medicine for thousands of years.  In many western countries, use of ginkgo has grown dramatically over the past few decades, both as an over-the-counter herbal supplement and a prescribed drug.  ████████ study (attached as Mitmesser Decl. Ex. L).[1]  Ginkgo is considered unique within the herbal medicinal field because supplements are generally consistent among major manufacturers.  ████████ study (attached as Mitmesser Decl. Ex. N).  Ginkgo is widely used in both the United States and Europe as an herbal supplement for a variety of medical and psychological conditions, including memory support, increasing learning capacity, and improvement of blood flow.  *See* Declaration of Edward Rosick ("Rosick Decl.), ¶ 3, Ex. PP (Expert Report at 3).  In fact, ginkgo is so widely accepted in Germany that it has been integrated into the German medical system.  *Id.*  Between 1984 and 1994, a panel of experts commissioned by the German Ministry of Health concluded ginkgo had numerous positive effects, including increased memory performance and learning capacity, improvement of blood flow, and reduction of retinal edema.  *Id.*

Ginkgo's Wide-ranging Uses.  There are literally dozens of different ginkgo products in the marketplace.  Declaration of William A. Delgado, Ex. CCC. Consumer surveys and product reviews indicate people purchase ginkgo for

---

[1] Scientific studies will be referenced by lead author and year of publication.

numerous reasons, including (1) cognitive benefits; (2) other health-related reasons such as "Heart Health," "Appetite Suppressant," "Hair, Skin, and/or Nails," "Bone health," treating hearing and tinnitus, providing relief from vertigo and headaches, fighting free radicals, improving mood, increasing circulation, and increasing libido; (3) recommendations from medical professionals; (4) recommendations from others (including family and friends); and (5) prior experience with the products.  *See* Declaration of Dr. Keith Ugone, Ex. WW (Expert Report at ¶¶ 29, 29(a)(i), 29(a)(iv)); Delgado Decl., ¶¶ DDD-III (collecting Amazon comments for various Ginkgo products).

### B.   Defendants and Their Products.

Plaintiff attacks the representations made on the labels of trunature® Ginkgo Biloba with Vinpocetine, which were sold at Costco. Mot. at 1, 3.[2]  The labels at issue state ginkgo "supports alertness & memory," "works as an antioxidant," "can help with mental clarity and memory," and "also helps maintain healthy blood flow to the brain to assist mental clarity and memory, especially occasional mild memory problems associated with aging."  Declaration of Theresa Thompson, Exs. T-X.  Although Plaintiff concedes trunature® ginkgo did in fact contain Vinpocetine, she argues that placement of "with Vinpocetine" on the label suggests it has benefits Plaintiff contends it does not have.  Mot. at 2.

Consumer Satisfaction.  Nielsen data reveals ███████████████ ████████████████████████████████████ purchase the supplement two or more times, evidencing high levels of consumer satisfaction. *See* Ugone Decl. Ex. WW (Expert Report Ex. 6).[3]  In addition, Amazon.com

---

[2] trunature® Ginkgo Biloba is manufactured by Defendant NBTY, Inc. and its related companies and sold by Costco under the trunature® private label.

[3] ███████████████████████████████████████████ *See* Ugone Decl. Ex.

1   customer reviews of ginkgo indicate many customers were satisfied with their prior

2   ginkgo purchase(s), and this drove subsequent purchases.  *Id.*; Delgado Decl.

3   Ex. FFF.

4   **C.   Defendants' Reliable Evidence on Efficacy.**

5   Over the past thirty years, numerous studies have validated ginkgo's

6   effectiveness in stabilizing (and in some cases improving) mental performance and

7   memory as well as benefitting those suffering from cognitive impairment,

8   dementia, macular degeneration, and peripheral arterial disease in both healthy and

9   diseased populations.  Rosick Decl. Ex. PP at 4-10 and Exs. QQ-VV; Mitmesser

10  Decl. Exs. A-R.

11  **D.   The Shortcomings of Plaintiff's Expert.**

12  Plaintiff has submitted an expert report from Dr. Richard Bazinet that opines

13  ginkgo offers no benefits.  As a preliminary matter, it is neither momentous nor

14  surprising that the medical community does not *universally* endorse ginkgo.  The

15  same could be said of various foods, vitamins, and even milk.

16  But, what is worse, as explained in Defendants' *Daubert* Motion, the studies

17  relied upon by Plaintiff's expert have a significant shortcoming; to wit, Plaintiff's

18  expert relies primarily, if not exclusively, on "intent-to-treat studies," which do not

19  exclude data from participants who failed to adhere to the protocol.  So, for

20  example, in the GEM study (reported by both DeKosky and Snitz), by the end of

21  the study, only 60% of the respondents in the ginkgo group were adherent.  Put

22  differently, the study's authors concluded that, based on the data collected from the

23  ginkgo group, ginkgo was inefficacious—even though fully 40% of those

24  respondents were not actually taking ginkgo as required by the protocol.

25  Unsurprisingly, "intent to treat" studies are inappropriate for determining efficacy

26

27

28  WW (Expert Report ¶¶ 29 (d) and 33-36, Ex. 6).  ███████████████████

████████████████████████████████████████████.

because of their susceptibility to false negatives.  Snitz[4] Depo Tr. at 128:2-129:17, Ex. 163 (Delgado Decl. Ex. ZZ).[5]  Moreover, Dr. Bazinet did not thoroughly review studies evidencing efficacy in diseased populations.  Pltf's Ex. J, ¶ 16.  Nor is he an expert qualified to testify on blood flow.

### E.   **Korolshteyn's Deposition Testimony**

Plaintiff has never been diagnosed with any cognitive or memory problems. Korolshteyn Depo. Tr. at 48:20-25 (Delgado Decl. Ex. AAA).  Nevertheless, on October 29, 2014, she purchased trunature® ginkgo from Costco, *id*. at 65:20-66:3, to help improve memory and reduce the loss of memory.  *Id*. at 70:25-71:20.

Plaintiff testified she paid "about $15" for the supplement and did not save the receipt, though was able to obtain one in December 2014 from Costco. *Id.* at 75:10-14, 76:15-77:1.  At the time, Plaintiff was aware of Costco's liberal refund policy and had, in fact, returned several products in the past because she was unhappy with them.  *Id.* at 84:24-85:4; Thompson Decl. Ex. S.  With respect to her ginkgo purchase, however, she testified she did not remember if she considered obtaining a refund or the reason she did not seek one.  Korolshteyn Depo. Tr. at 85:5-86:7 (Delgado Decl. Ex. AAA).

That statement would prove to be untrue.  As explained below, in her initial Facebook messages with Peter Crane, Plaintiff stated that because she bought the ginkgo at Costco, it would be "pretty easy to return."  Delgado Decl. Ex. BBB.

---

[4] Dr. Elizabeth Snitz is plaintiff's expert in the related cased of *Petkevicius v. NBTY, Inc., et al*.

[5] In a different intent-to-treat study that ran a secondary analysis focusing solely on **adherent** participants (*i.e.*, those who actually took the ginkgo), the authors found that ginkgo indeed had statistically beneficial effects.  Snitz Depo. Tr. at 122:21-124:10 and Ex. 162 (Delgado Decl., Ex. ZZ).

**F.**    **<u>Counsel's Recruitment of Plaintiff to Serve as Class Representative.</u>**

Originally, Plaintiff testified that no one encouraged her to bring this suit. *Id.* at 22:25-23:1. She further testified her involvement in the case started when she saw a Facebook post by her friend, attorney Peter Crane, asking people to contact him if they had purchased Costco's trunature ginkgo supplement, and she responded to the Facebook wall post via private message. *Id.* at 15:17-18:23.

Defendants moved to compel production of the Facebook messages. Dkt. No. 91. In opposition to Defendant's motion to compel, Plaintiff declared that even her first Facebook message with Mr. Crane was privileged. Dkt. No. 93. Mr. Crane also testified on this subject, stating the reason for his Facebook post was that he was "specifically interested in learning more about [the ginkgo products] and what the consumers thought of them." Crane Depo. Tr. at 28:1-9 (Delgado Decl. Ex. UUU). In light of Plaintiff's clear admission that Mr. Crane was merely her friend at the time she responded to Facebook post, the Court overruled Plaintiff's attorney-client privilege objection, Dkt. No. 96, and Plaintiff had to produce her Facebook messages with Mr. Crane. *Id.*

The Facebook messages told a far different story than what Plaintiff stated in her deposition and sworn declaration. First, although Plaintiff testified she had taken ginkgo *before* contacting Mr. Crane, her initial Facebook message revealed she had not yet taken the supplement: "I just purchased TruNature ginkgo ***but haven't taken it yet***. Something I should know?" Delgado Decl. Ex. BBB (emphasis added). Their messages also show Mr. Crane was not trying to learn what consumers thought of ginkgo, but rather was *trying to recruit a plaintiff—* irrespective of whether that plaintiff had ever taken ginkgo.

Indeed, rather than Plaintiff having contacted Mr. Crane to seek legal advice about a product she used and did not believe to have been working, as she had claimed, the exchange between the two continued as follows:

140545.2

[Crane] They are making false brain health claims on the label.  **I need a plaintiff. There would be money in it for you when it settles and in all likelihood would not take any of your time**. Interested?

[Plaintiff] hmmm I see now why you want to discuss over the phone. Are you the attorney?

[Crane]  **No** I use a top class action firm. I get a percentage of the settlement for finding cases/clients. It's a nice little side biz [smile emoticon]

[Plaintiff] gotcha...ok well I'm not sure I'm much help
**I've never taken it**
first bottle ever purchased...was hoping it would help with sleepy mommy brain

[Crane]  All you have to have done is bought the product and believe what the label said.  **Easy money**!

[Plaintiff]  ahhh...and go to court?

[Crane]  No these always settle. Never seen one go to court.
…
[Plaintiff]  I have to run to parent teacher conference...yup life not quite the same as it was on the back of your ducati
email me the details...i'll look at it tonight I promise.
...
[Plaintiff]  **and I take it I shouldn't waste my time taking the supplement?**

**[Crane]  Probably not.**

*Id.* (emphasis added).  Although it is clear from these messages that Plaintiff never tried ginkgo, she falsely testified she *had* but had not continued because it was not working.  Korolshteyn Depo. Tr. at 81:1-82:14 (Delgado Decl. Ex. AAA) (stating: "I remember feeling why doesn't this work."). Later in the message string, Plaintiff tells Crane that she hopes "you get more out of this than I will LOL."  Delgado Decl. Ex. BBB.

1   <u>Plaintiff's Allegations.</u>  Plaintiff alleges two claims on behalf of a putative

2   California class:  Unfair Competition pursuant to Cal. Bus. & Prof Code § 17200

3   ("UCL") and violation of the Consumer Legal Remedies Act ("CLRA").

4   **III.   LEGAL STANDARD**

5       "The class action is 'an exception to the usual rule that litigation is

6   conducted by and on behalf of the individual named parties only.'" *Comcast Corp.*

7   *v. Behrend*, — U.S. —, 133 S. Ct. 1426, 1432 (2013) (quoting *Califano v.*

8   *Yamasaki*, 442 U.S. 682, 700–701 (1979)).  Rule 23 does not "establish an

9   entitlement to class proceedings for the vindication of statutory rights[,]" but

10  rather "imposes stringent requirements for certification that in practice exclude

11  most claims, . . . ."  *Am. Express Co. v. Italian Colors Rest.*, — U.S. —,

12  133 S. Ct. 2304, 2307 (2013).

13      "Parties seeking class certification bear the burden of demonstrating that

14  they have met each of the four requirements of Federal Rule of Civil Procedure

15  23(a) and at least one of the requirements of Rule 23(b)."  *Ellis v. Costco*

16  *Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011).  "The four factors listed

17  in Rule 23(a) – numerosity, commonality, typicality, and adequacy of

18  representation – are not factors to be weighed on a sliding scale.  Rather, each is a

19  prerequisite, and failure to satisfy even one factor results in denial of class

20  certification."  *Rothman v. Gen. Nutrition Corp.*, 2011 WL 6940490, at *6

21  (C.D. Cal. Nov. 17, 2011).  "[D]istrict courts are not only at liberty to, but must

22  perform a rigorous analysis to ensure that the prerequisites of Rule 23(a) have

23  been satisfied."  *Ellis*, 657 F.3d at 980 (internal quotation marks omitted).

24  "[S]ometimes it may be necessary for the court to probe behind the pleadings

25  before coming to rest on the certification question," . . . Frequently [the court's]

26  'rigorous analysis' will entail some overlap with the merits of the plaintiff's

27  underlying claim.  That cannot be helped."  *Wal-Mart v. Dukes*, 564 U.S. 338,

28  350-51 (2011) (internal citations and quotation marks omitted).

Where, as here, the claim is exclusively for monetary relief, Rule 23(b) (3) permits certification only where "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* The need to perform a rigorous analysis extends to Rule 23(b)'s stringent predominance and superiority requirements as well. *See Comcast*, 133 S. Ct. at 1429, 1433.

Rule 23(b) (3)'s superiority requirement can be satisfied only if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency" and "no realistic alternative exists" to class resolution. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). Even if a defendant's conduct involves a "common nucleus of facts," "[i]f each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001) (internal citations omitted) (affirming denial of class certification).

## IV.   ARGUMENT

### A.   Plaintiff's Credibility Problems Prevent Her from Adequately Representing the Class.

As set forth in Section II-F, *supra*, Plaintiff demonstrated a willingness in her deposition to "adjust" the facts of what had occurred to suit a more desirable narrative. Rather than admitting she was recruited to be a plaintiff by her Facebook friend, attorney Peter Crane, *before* she had ever sampled the ginkgo she purchased at Costco and rather than admitting she *never* took it, Plaintiff stated she had *already* taken the pills before she ever spoke to Mr. Crane. Korolshteyn Depo. Tr. at 79:3-11, 81:1-82:14 (Delgado Decl. Ex. AAA). Plaintiff also testified no one had encouraged her to bring this suit, *id.* at 22:25-23:1, which was contradicted by her Facebook messages with Mr. Crane, in which he told her he "need[ed] a

1   plaintiff," "in all likelihood would not take any of your time" and it would be

2   "Easy Money!"  Delgado Decl. Ex. BBB.

3       Courts were faced with similar factual scenarios in *Bohn v. Pharmavite,*

4   *LLC*, 2013 WL 4517895, at *2–3 (C.D. Cal. Aug. 7, 2013) and *Bodner v. Oreck*

5   *Direct, LLC*, 2007 WL 1223777, at *2-3 (N.D. Cal. April 25, 2007).  In both cases,

6   the courts denied class certification on adequacy grounds.

7       In *Bohn*, a case in which some of Plaintiff's attorneys here were counsel of

8   record for Ms. Bohn, the plaintiff challenged the representation "helps maintain a

9   healthy heart" on the label of Vitamin E supplements, arguing that clinical studies

10  disproved Vitamin E's heart benefits.  *Id.*, 2013 WL 4517895 at *1.  Plaintiff

11  claimed to have purchased the vitamins at Costco in 2011 and stated she learned

12  soon after from her close friend (plaintiff's counsel) that Vitamin E was not

13  effective.  *Id.* at *2.  Discovery revealed the plaintiff had actually purchased the

14  Vitamin E at Costco two years earlier than she testified, though she still insisted

15  she had relied on the label being challenged.  *Id.*  The *Bohn* court was troubled by

16  these inconsistencies, and also by her close relationship with counsel, stating that

17  plaintiff, "at least unknowingly, **tailored aspects of her memory to fit the**

18  **narrative of this action**, which further increases the chances that she may have

19  also unknowingly tailored other facts about her purchase—such as reliance and

20  deception—based on the requirements of this suit."  *Id.* (emphasis added).  The

21  court found these inconsistencies "even more troubling when viewed in light of

22  Plaintiff's close personal relationship with [her attorney] Weltman" and thus found

23  plaintiff could not adequately represent the class:

24       As the Eleventh Circuit has recognized, a close personal relationship
        between the named plaintiff and class counsel "creates a present
25       conflict of interest—an incentive for [the named plaintiff] to place the
        interests of [the counsel] above those of the class." *London v. Wal–*
26       *Stores, Inc.*, 340 F.3d 1246, 1255 (11th Cir. 2003).  Such relationship
        warrants scrutiny because they pose "the danger of champerty,"
27       especially when the attorney's fees will vastly exceed what any of the

28

class members will receive. *Id.* at 1254–55. That Plaintiff recalled the events in a way that fits the narrative of this lawsuit and failed to conduct basic due diligence, when viewed in light of Plaintiff and Weltman's eight-year friendship involving weekly gatherings, become strong indicia of an ongoing conflict. They suggest that Plaintiff may have, at best, unduly relied on her close friend, or, at worst**, have no real interest in prosecuting this action other than to assist her close friend in recovering a sizeable fee award relative to the small individual recoveries of the class members**.

*Id.* at *3 (emphasis added) (internal quotation marks omitted).

In the *Bodner* case, the plaintiff was also recruited by counsel, there by responding to an advertisement in the newspaper indicating plaintiff's counsel was seeking a class representative. *Id.*, 2007 WL 1223777 at *1. The court repudiated plaintiff's counsel's tactic of first constructing a lawsuit and then finding a "stand-in plaintiff," stating it was clear that counsel was "the driving force behind this action." *Id.* at 2. "Such a 'cart before the horse' approach to litigation is not the proper mechanism for the vindication of legal rights." *Id.* The court found adequacy had not been met:

> To grant class certification in such circumstances would be to place this court's imprimatur on litigation practices which it finds abhorrent and inconsistent with the standards of federal class action suits. In short, the conduct in this action does not look good, does not sound good, and does not smell good. In fact, it reeks. The court will not participate in this scheme by certifying a class.

*Id.* at *3.

Because Plaintiff's inaccurate testimony here is not unlike the *Bohn* case, and her recruitment by, and relationship with, counsel, is strikingly similar to that in *Bodner*, Defendants request the Court find Plaintiff has not fulfilled the adequacy requirement, and "not participate in this scheme by certifying a class." *Bodner*, *id.* at *3; *see also Drimmer v. WD-40 Co.*, 343 F. App'x 219, 221 (9th Cir. 2009) (where the named plaintiff and putative class counsel were "close

friends," the relationship between named plaintiff and counsel "***alone***" would be sufficient to affirm the district court's denial of certification, stating the court had been "appropriately concerned that [the named plaintiff's] decisions may not be based on the best interests of class members, but on the best interests of his attorney.") (emphasis added); *Kaplan v. Pomerantz*, 132 F.R.D. 504, 510 (N.D. Ill. 1990) (finding class representative inadequate when he "evince[d] a willingness to give . . . misleading testimony in an effort to further his interests in this litigation"); *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (affirming finding of inadequacy when named plaintiff "repeatedly changed his position as to whether he received" the notice "that form[ed] the very basis of his lawsuit," which "surely would create serious concerns as to his credibility at any trial"); *cf. State of Alaska v. Suburban Propane Gas Corp*., 123 F.3d 1317, 1321 (9th Cir. 1997) ("'A named plaintiff's motion for certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'") (quoting *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992)).

## B.     Plaintiff Cannot Establish Commonality, Predominance or Superiority.

"For purposes of class certification, the UCL . . . and CLRA are materially indistinguishable.  To prevail on a CLRA claim for purposes of Rule 23(b) (3), and thus to prevail on a claim under the UCL . . . , [a plaintiff] must show (1) a misrepresentation, (2) reliance, and (3) damages." *See Hobbs v. Brother Int'l Corp.*, 2016 WL 4734394, at *3 (C.D. Cal. Sept. 8, 2016) (internal citations and quotation marks omitted).

Plaintiff argues her claims raise the following two questions, which she contends are capable of resolution using classwide evidence: "(1) whether Defendants misrepresented their Product has the ability to provide brain health benefits; and (2) whether the misrepresentations were likely to deceive a

reasonable consumer." Mot. at 17. Plaintiff argues that, because the evidence she would introduce regarding ginkgo and vinpocetine purportedly would be the same across the class, commonality and predominance are met. *Id.* But that does not suffice. Even if Plaintiff's questions were framed correctly in light of her claims—which Defendants contend they are not because Plaintiff instead must show classwide (1) misrepresentation, (2) reliance, and (3) damages, *supra* at 13—Plaintiff fails to demonstrate there are common ***answers*** to these questions given Defendants' defenses to these claims would differ across the class. *See Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 543 (9th Cir. 2013) ("What matters to class certification is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common ***answers*** apt to drive the resolution of the litigation.") (quoting *Wal-Mart*, 564 U.S. at 350) (emphasis added).

After all, "[a]ny competently crafted class complaint literally raises common questions." *Wal-Mart*, 564 U.S. at 349 (internal quotation marks omitted). Here, Rule 23 requires that Plaintiff raise a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims ***in one stroke***." *Id.* at 350 (emphasis added). Plaintiff has not done that.

The many differences across the class "impede the generation of common answers." *Id.* ("Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."). These dissimilarities include (a) the dozens of different reasons the class chose to purchase ginkgo; (b) the varying degrees of prior exposure to information about ginkgo; and (c) the actual physical condition of the class member, *i.e.*, whether the class member had a memory problem that led her to take ginkgo. Because these differences do not permit common answers to the questions at issue, class certification should be denied.

**1.**   *Whether the label was material to class members is not capable of classwide resolution.*

a.   <u>Consumer surveys show many class members purchased ginkgo based on claims unrelated to the labels at issue.</u>

Consumers are familiar with ginkgo long before they enter a store and read a label.[6]  Indeed, surveys and product reviews indicate some consumers purchase ginkgo based on recommendations from healthcare professionals or family and friends.  *See* Ugone Decl. Ex. WW (Expert Report at ¶ 29, 29(a)(i), 29(a)(iv)); Delgado Decl. Exs. DDD-III.  Surveys also show consumers choose ginkgo for numerous reasons unrelated to cognition or memory ***not mentioned on Defendants' labels at all***, *e.g.*, "Heart Health" (7%), "Energy" (20%), "Weight Loss" (16%), "Blood Pressure" (11%), "Hair, Skin and/or Nails" (13%), "Mood Enhancement" (20%) and "Stress Management" (13%).[7]  Ugone Decl. Ex. WW (Ex. 5 to Report).

In *Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*, 2016 WL 5920345, at *8 (C.D. Cal. June 23, 2016), the court found predominance lacking based on similar facts as those here.  There, the court relied on surveys the defendants introduced, which showed (1) consumers purchase TVs due to a variety of factors, including their own research, speaking with sales people, and recommendations from other people; and (2) there were numerous other reasons a consumer might have

---

[6] *E.g.*, Petkevicius Motion for Class Certification at 4 (noting "public's association of ginkgo biloba with support of cognitive function, memory and mental focus"); Petkevicius Depo. Tr. at 41:14-42:5 (Delgado Decl. XX).

[7] Consumer reviews list other reasons, including:  treating hearing and tinnitus, providing relief from vertigo, headaches, altitude sickness, fighting free radicals, improving mood, increasing circulation, and increasing libido.  Ugone Decl. Ex. WW (Report at ¶ 29(a)(i),(iv)); Delgado Decl. Exs. DDD-III (Amazon reviews referencing other reasons).

purchased the TV at issue in addition to or aside from the claim on the label
(image quality), *e.g.*, style, energy efficiency, color rendition, and environmental
benefits.  *Id.*  The Court therefore ruled that "issues of reliance and materiality
require individualized inquiry" and denied certification, holding that "[p]laintiff
will not be able to demonstrate with common proof that the [product] label was
material to consumers' purchasing decision."  *Id.*; *see also Minkler v. Kramer
Labs., Inc.*, 2013 WL 3185552, at *6 (C.D. Cal. Mar. 1, 2013) (finding
predominance lacking because some class members "relied on the
recommendations of doctors or pharmacists" and not the packaging).

Defendants contend the Court should reach the same conclusion here, *i.e.*,
that classwide reliance on the trunature® ginkgo label[8] cannot be presumed.  *See
Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 457 (S.D. Cal. 2014) ("[G]iven the
persuasive evidence presented on consumer expectations, the varying factors that
influence purchasing decision, and consumer satisfaction, the Court finds that
Plaintiffs have also failed to demonstrate that the elements of materiality and
reliance are subject to common proof."); *Moheb v. Nutramax Labs. Inc.*,
2012 WL 6951904, at *4 (C.D. Cal. Sept. 4, 2012) ("[S]ome of the members of
the Class never saw or relied upon Defendant's representation that Cosamin has
been proven to reduce joint pain.  For example, some of the class members *may
have relied on the recommendations of doctors,* veterinarians, reviews, articles, or
retailers' sales pitches, and, thus, Defendant's *statements about joint pain were of
no importance to them*.") (emphasis added).

b.  <u>Some class members also likely relied on marketing for
other ginkgo products, requiring individualized inquiries.</u>

Although Plaintiff contends class members were exposed to "uniform"

---

[8] This includes reliance on "With Vinpocetine," which Plaintiff does not dispute is
a true statement, particularly given there is no evidence consumers put any
weight on that statement.

messages about ginkgo, Mot. at 5, 9, 13, she overlooks third party advertising. Given the number of other ginkgo products on the market, class members were likely exposed to varied claims about ginkgo's benefits from labels or advertisements for ginkgo products *other* than Defendants'.  *E.g.*, Nature's Measure Product Page ("Give your brain a wake-up call! Jump start your memory and concentration with Nature's Measure™'s 500 mg ginkgo biloba formula.") (Delgado Decl. Ex. SSS).  Therefore, the facts here do not lend themselves to classwide evidence of reliance.  *See Pierce-Nunes*, 2016 WL 5920345, at *7 (finding "persuasive" that many consumers "learned about LED TVs based on information from Defendants, other manufacturers, retailers, third-parties, and media made freely available.").

> **2.** *The proposed class contains persons who benefitted from ginkgo, thus injury is incapable of classwide resolution and results in an overbroad class with members who lack standing.*

"Rigorous analysis" at class certification often requires courts "to probe behind the pleadings before coming to rest on the certification question," and "will entail some overlap with the merits of the plaintiff's underlying claim, [which] cannot be helped." *Wal-Mart*, 564 U.S. at 350-51.  Here, that requires the Court to go beyond Plaintiff's assertion that "the evidence regarding falsity of Defendants' brain health claims would be identical," Mot. at 17, and "peek" at the merits.

After doing so, it is clear studies have shown ginkgo can have different effects on different populations based on their cognitive health.  *See*, *e.g.*, ███████ study (Rosick Decl. Ex. PP at 10 and Ex. SS) and ██████ ████ study (Mitmesser Decl. Ex. Q).  Therefore, it is not enough that Plaintiff (who did not take ginkgo in any event) purportedly relied on the label and believes ginkgo did not support her alertness or memory.  Rather, it must be shown ginkgo did not "support alertness & memory" for ***any*** class members, which Plaintiff cannot prove, let alone show with classwide evidence.

1   In short, although Plaintiff argues commonality and predominance are easily

2   met because "either Defendants misrepresented their Product has the ability to

3   provide mental clarity, memory and alertness benefits or not," Mot. at 17, she far

4   oversimplifies her burden here.  As the Ninth Circuit has stated, "the question of

5   likely deception does not automatically translate into a class-wide question."

6   *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014).  Even

7   assuming *arguendo* all class members were exposed to the same representation and

8   understood the representation in a similar way, and that, as Plaintiff contends,

9   ginkgo does not support brain health in individuals *like her*, Plaintiff's claims still

10  would not be amenable to class treatment unless Plaintiff could show classwide

11  proof that ginkgo does not support brain health for *any* class member, including

12  those with memory problems.  The evidence proves otherwise.

13      a.  <u>Potential class members with memory problems who
14          purchased ginkgo suffered no injury.</u>

15  Plaintiff is in her early 40s—below the typical purchaser age one would

16  expect of a product that says it "assist[s] mental clarity and memory, especially

17  occasional ***mild memory problems associated with aging***."  Unlike Plaintiff, some

18  proposed class members undoubtedly took ginkgo because they were experiencing

19  "memory problems associated with aging"—some of them mild and some of them

20  serious, such as dementia or Alzheimer's.  Plaintiff cannot prove ginkgo does *not*

21  help those experiencing memory problems; in fact, her expert did not even

22  "consider studies that looked at subjects with diseases as pertinent to the questions

23  at hand."  Pltf's Ex. J, ¶ 16 (Bazinet Report).  In reality, the evidence

24  overwhelmingly shows ginkgo *does* help those with memory problems.[9]

25  At worst then, Plaintiff can perhaps argue ginkgo does not help *everyone*.

26  But that does not mean it helps *no one*.  As a result, Plaintiff cannot establish

27

28  [9] Rosick Decl., ¶ 5(c), (d), Ex. PP at p. 10; Mitmesser Decl. Exs. F-J and O.

1  classwide injury because ginkgo undeniably provided a cognitive benefit to a

2  portion of the class.  *See Moheb v. Nutramax Labs. Inc.*, 2012 WL 6951904, at *4

3  (C.D. Cal. Sept. 4, 2012) ("Plaintiff's argument that the alleged falsity of

4  Defendant's efficacy claims can be adjudicated on a classwide basis solely 'by

5  reviewing and analyzing the relevant scientific data' is also unpersuasive.

6  Scientific data suggests that Cosamin works for some, but may not work as well

7  for others, but the proposed class does not differentiate between these groups.").

8      In *Kachi v. Natrol, Inc.*, another supplement case in this District, the court

9  was presented with a similar scenario, *i.e.*, the plaintiff argued that a supplement

10  did not provide the represented health benefits to **healthy** purchasers.  *Id.,* 2014

11  WL 2925057, at *5 (S.D. Cal. June 19, 2014).  The court found the plaintiff failed

12  to "take into account the class of purchasers, consisting of unhealthy individuals,

13  who arguably actually received benefits from Natrol's products." *Id.*  The *Kachi*

14  court denied certification, holding:

15
16      While the representations contained on the packaging are uniform, the
injuries suffered by the two groups (healthy vs. unhealthy) are distinct

17  and not capable of resolution by uniform proof on the present record.
As the class is defined to include both healthy and unhealthy

18  purchasers of Natrol's products, the court concludes . . . commonality
and typicality requirements of Rule 23(a) are not satisfied.

19

20  *Id.*  Rule 23 commands a similar result here.[10]

21              b.    Satisfied customers likewise suffered no injury.

22      Defendants' evidence also demonstrates that ███████████████████

23  ████████████████████████████ buy the products two or more

24  times.  Ugone Decl. Ex. WW (Expert Report at Ex. 6).  The repeat purchasing rate,

25

26  _____

[10] Dr. Snitz, expert for Plaintiff Paige Petkevicius in in the related case of

27  *Petkevicius v. NBTY, Inc., et al.*, concedes as much, having testified that diseased
and healthy people are "different populations and Ginkgo could have different

28  effects in each."  Snitz Depo. Tr. at 167:8-14 (Delgado Decl. Ex. ZZ).

along with the numerous customer reviews found online, demonstrate that a great many satisfied—and thus uninjured—customers would be within the proposed class, making it impermissibly overbroad. *See Minkler,* 2013 WL 3185552 at *3 (rejecting proposed class because it would "include members who derived benefit from[,] and are satisfied users of the product. . . . "[S]uch members have no injury and no standing to sue.") (internal quotation marks omitted); *see also McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, 2015 WL 4537957, at *6 (N.D. Cal. July 27, 2015) ("Plaintiffs' class definition is flawed because it includes persons . . .  who received a benefit [from] their purchase.").

c. <u>Absent class members who suffered no injury or already received refunds lack standing to sue.</u>

As set forth in sections III-B-2(a) and (b), *supra*, the lack of injury of absent class members defeats commonality and predominance.  Additionally, some courts consider whether class members suffered injury as part of the standing requirement, *i.e.*, a proposed class can never be comprised of absent members who are without injury because they would lack Article III standing.  *See Mazza v. Am. Honda Motor Co., Inc.,* 666 F.3d 581, 594 (9th Cir. 2012) ("No class may be certified that contains members lacking Article III standing.") (alteration and citation omitted); *Webb v. Carter's Inc.*, 272 F.R.D. 489, 498 (C.D. Cal. 2011) (holding class action cannot proceed where class members lack Article III standing).  Although Plaintiff contends injury can be presumed (Mot. at 14), a class containing uninjured individuals would run afoul of Article III.  As Chief Justice Roberts stated in his concurring opinion in *Tyson Foods, Inc. v. Bouaphakeo*, -- U.S. --, 136 S. Ct. 1036, 1053 (2016): "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.  The Judiciary's role is limited 'to provid[ing] relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm.'"  *Id.* (quoting

1   *Lewis v. Casey*, 518 U.S. 343, 349 (1996)).[11]

2       Given Costco's liberal refund policy, the class is also impermissibly

3   overbroad because it would contain class members who already received refunds

4   for the ginkgo they purchased and, thus, would not be injured.  *See Turcios v.*

5   *Carma Labs., Inc.*, 296 F.R.D. 638, 645 (C.D. Cal. 2014) ("The Court agrees with

6   Defendant that the proposed class is not sufficiently ascertainable because it is

7   overbroad.  Defendant has presented evidence of its full refund policy.  At a

8   minimum, the proposed class is overbroad because it would include consumers

9   who already received refunds and, therefore, have not suffered any damages.");

10  *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482–83 (N.D. Cal. 2011) (finding

11  proposed class of all who purchased Acer notebooks too broad because it included

12  consumers who already received their remedy by returning notebooks for full

13  refunds); *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1152

14  (N.D. Cal. 2010) (finding class to be overbroad "because the class would include

15  persons who had received refunds or replacement parts or who had not suffered

16  any damages at all. . . . 'Such members have no injury and no standing to sue.'")

17  (quoting *Hovsepian v. Apple, Inc.*, 2009 WL 5069144, at *6 (N.D. Cal. 2009)).

18      **3.**    *Plaintiff has not established a workable damages model tied to*

19      *liability.*

20      In *Comcast Corp. v. Behrend*, the Supreme Court explained that, to satisfy

21  the Rule 23(b)(3) predominance requirement, damages must be "capable of

22  measurement on a classwide basis" and "consistent with [the plaintiff's] liability

23  case."  133 S.Ct. at 1433.  Plaintiff's damages model, or lack thereof, runs afoul of

24  *Comcast's* requirements.

25      Here, Plaintiff seeks restitution pursuant to the UCL and CLRA, the proper

26

27  [11]  To the extent that California law states that the UCL requires "no individualized

28  proof of injury," even in a class action case, it runs contrary to Rule 23 and/or
    Article III of the Constitution to which this Court must adhere.

measure of which is the difference between what class members paid and the value of what they received. *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009). As Plaintiff concedes, Mot. at 23, because Plaintiff seeks a full refund for *all* class members, that necessarily means she must prove the product had *no* value to *any* class members. *See Brazil v. Dole Packaged Foods, LLC*, 2016 WL 5539863, at *2–3 (9th Cir. Sept. 30, 2016) (affirming denial of class certification: "Under these rules, a plaintiff cannot be awarded a full refund unless the product she purchased was worthless. Brazil has not proven Dole's products were valueless.") (internal citation omitted). That she simply cannot do.

Plaintiff defends her "full refund model" by stating that the "value of the Products was $0, [so] Plaintiff and the Class should get all of their money back." Mot. at 23 (internal citations omitted). However, far from being viewed as a "singular purpose Product" as Plaintiff contends, Mot. at 2, a portion of the class purchased ginkgo for reasons *other than* those related to cognition and memory.[12] *See* Ugone Decl. Ex. WW (Report at ¶ 29, 29(a)(i), 29(a)(iv)); Delgado Decl. Ex. FFF. For example, class members may have purchased ginkgo either because of, or in addition to, the desire for antioxidants—as stated on Defendants' labels[13]—or for other health reasons, such as to help with tinnitus. *Id.*; Delgado Decl. Exs. FFF.[14] Several of the health benefits consumers look for in a ginkgo product are supported by studies Defendants have introduced, such as improvement in

---

[12] As addressed in Section II-B-4(c) *infra*, a significant portion of the putative class were fully satisfied and thus lack standing altogether.

[13] Even considering Plaintiff's expert's opinion that ginkgo has only a trivial amount of antioxidants, Pltf's Ex. J, ¶ 9, Plaintiff cannot dispute ginkgo contains them.

[14] Delgado Decl. Exs. DDD, EEE and GGG-III contain consumer reviews for other ginkgo products (*i.e.*, not trunature® Ginkgo) in which consumer state the various reasons why they generally purchase ginkgo.

peripheral arterial disease (which is caused by insufficient blood flow),[15] macular degeneration and tinnitus.  Rosick Decl. Ex. PP at pp. 6-7; Mitmesser Decl. Exs. A, C-D.  Plaintiff's expert does not (and is not qualified to) challenge these other benefits.[16]

Therefore, even assuming *arguendo* that the challenged cognitive and memory claims were both untrue as to all class members (an untrue assumption for the reasons explained above) **and** relied on by all class members, class members who had improvement in macular degeneration, tinnitus, peripheral arterial disease or circulation would not be entitled to a *full* refund given the benefit they derived.  In essence, this case is strikingly similar to the *In re POM* case,[17] where the court granted defendant's motion to decertify on that basis, concluding that neither a partial refund (not proposed here) nor a full refund model would "accurately measure classwide damages[,]" and finding a full refund model flawed because it made "no attempt to account for benefits conferred upon Plaintiffs" due to a false "assumption that not a single consumer received a single benefit, be it hydration, flavor, energy, or anything else of value."  *In re POM Wonderful LLC*, 2014 WL 1225184, at *3 and n.2 (C.D. Cal. Mar. 25, 2014).

Although Plaintiff argues she "need not set forth a methodology that

---

[15] Mitmesser Depo. Tr. at 108:14-110:5 (Delgado Decl. Ex. TTT).

[16] *See* Bazinet Depo. Tr. at 106:12-17, 108:13-23 (conceding ginkgo contains antioxidants though insisting it contains only a trivial amount) and 123:1-14 (did not consider whether ginkgo increased circulation to arms and legs, only brain) (Delgado Decl. Ex. YY).

[17] Plaintiff attempts to distinguish this case, arguing that the plaintiff in *In re Pom* had conceded there were other reasons consumers might buy the juice at issue besides the label's claim that it would "prevent prostate cancer."  Mot. at 6, n. 3.  Plaintiff's refusal to acknowledge the uncontested evidence here showing there are other reasons beyond cognition/memory why customers buy ginkgo does not negate the evidence or in any way make it less persuasive.  *E.g.*, Ugone Decl. Ex. WW (Report at ¶¶ 29, 29(a)(i), 29(a)(iv)); Delgado Decl. Exs. DDD-III.

accounts for all variables so long as the proposed methodology is not arbitrary," Mot. at 24, her full refund model is exactly that.  As the Supreme Court has made clear, courts must not overlook defective damages theories at this stage, and if a plaintiff fails to establish at class certification "that damages are capable of measurement on a classwide basis," then certification should be denied.  *See Comcast*, 133 S. Ct. at 1432-33 (holding that damages model "must measure only those damages attributable [to liability].  If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3).").  Plaintiff's full refund model should therefore be rejected.  *See Brazil v. Dole Packaged Foods, LLC*, 2014 WL 2466559, at *15 (N.D. Cal. May 30, 2015) ("Because the California consumer protection statutes . . . authorize the recovery only of whatever price premium is attributable to Dole's use of the allegedly misleading label statements, [a] Full Refund Model is inconsistent with Plaintiff's liability case and must be rejected.").

C.    **<u>Dissatisfied Class Members Receiving Refunds Directly from Costco Would Be a Superior Method of Resolution.</u>**

Costco has a well-known policy of providing full refunds to any consumer who contacts it when dissatisfied with a product.  Thompson Decl., ¶ 4.  Plaintiff was aware of this policy, referencing the ease of returning items to Costco in her Facebook messages with Mr. Crane.  Delgado Decl. Ex. BBB (stating, in inquiring why Crane was asking on Facebook if anyone had purchased ginkgo, that she had bought it at Costco so it would be "pretty easy to return.").  Prior to this lawsuit, Plaintiff had also taken advantage of Costco's liberal return policy on multiple occasions.  Korolshteyn Depo. Tr. at 84:24-85:4, 85:24-86:3 (Delgado Decl. AAA); Thompson Decl. Ex. S.

Any other Costco members who purchased trunature® ginkgo and did not find it effective would be able to obtain a full refund ***without a receipt***.  *See*

1   Thompson Decl., ¶ 4.  There is therefore no need to certify a class to make anyone

2   whole.  As Plaintiff herself noted, Costco already does that—without burdening

3   the courts.  *See Webb*, 272 F.R.D. at 504 ("The Court is persuaded that a class

4   action is not superior because Carter's is already offering the very relief that

5   Plaintiffs seek:  it allows consumers to obtain refunds for the garments, even

6   without a receipt, . . . ."); *Turcios*, 296 F.R.D. at 648–49 ("The Court is

7   unconvinced that a class action is superior . . . Defendant already offers consumers

8   a full refund . . . for the product for any reason . . . , which is greater than the 36%

9   refund sought by Plaintiff.  The superiority requirement is not met where "[i]t

10  makes little sense to certify a class where a class mechanism is unnecessary to

11  afford the class members redress.") (internal citation and quotation marks

12  omitted).

13  **V.    CONCLUSION**

14       Because Plaintiff has failed to demonstrate the Rule 23 requirements have

15  been met, class certification should be denied.

16

17  Dated:  December 16, 2016          WILLENKEN WILSON LOH &
                                       DELGADO LLP
18

19                                     By:  *s/ William A. Delgado*

20                                          William A. Delgado
                                            Attorneys for Defendants
21                                          COSTCO WHOLESALE
                                            CORPORATION and NBTY, INC.
22

23

24

25

26

27

28