1   William A. Delgado (Bar No. 222666)
    wdelgado@willenken.com
2   Megan O'Neill (Bar No. 220147)
    moneill@willenken.com
3   WILLENKEN WILSON LOH & DELGADO LLP
    707 Wilshire Blvd., Suite 3850
4   Los Angeles, California 90017
    Telephone: (213) 955-9240
5   Facsimile:  (213) 955-9250

6   Attorneys for Defendants
    NBTY, INC., NATURE'S BOUNTY,
7   INC., REXALL SUNDOWN, INC., and
    COSTCO WHOLESALE CORPORATION

8

9                    UNITED STATES DISTRICT COURT

10                 SOUTHERN DISTRICT OF CALIFORNIA

11  PAIGE PETKEVICIUS, on Behalf of      CASE NO.: 3:14-CV-02616-CAB-RBB
    Herself and All Others Similarly     CASE NO.: 3:15-CV-00709-CAB-RBB
12  Situated,

13              Plaintiff,              **DEFENDANTS' OPPOSITION TO**
                                        **PLAINTIFFS' MOTION TO**
14       v.                             **STRIKE THE DECLARATION OF**
                                        **DR. SUSAN MITMESSER**
15

16  NBTY, INC.; NATURE'S BOUNTY,        Date:     TBD
    INC., REXALL SUNDOWN, INC.; and     Time:     TBD
17  DOES 1-100,                         Judge:    Hon. Cathy Ann Bencivengo
                                        Ctrm:     4C
18              Defendants.
                                        **PER CHAMBERS RULES, NO**
19  _____     **ORAL ARGUMENT UNLESS**
20                                      **SEPARATELY ORDERED BY THE**
    TATIANA KOROLSHTEYN, on behalf      **COURT**
21  of herself and all others similarly
    situated,                          **[REDACTED VERSION]**
22
                Plaintiff,
23
         v.
24
    COSTCO WHOLESALE
25  CORPORATION and NBTY, INC.,

26              Defendants.

27  _____

28

_____
    DEFENDANTS' MEMORANDUM IOT              CASE NO.: 3:14-CV-02616-CAB-RBB
    MOTION TO STRIKE MITMESSER              CASE NO.: 3:15-CV-00709-CAB-RBB

141059.1

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ........................................................................................ 1

II.    ARGUMENT ............................................................................................... 3

    A.    Mitmesser Testified to What NBTY Relied on and Why and
         Therefore Provided Percipient, Not Expert, Testimony ....................... 3

    B.    Regardless of Whether Mitmesser Is Viewed as a Percipient or
         an Expert Witness, No Report Would Have Been Required. ............... 5

    C.    There Is No Basis to Exclude the Eighteen Studies NBTY
         Relied On to Substantiate Its Ginkgo Labels, All of Which
         Were Produced in Discovery. .............................................................. 7

         1.    All Eighteen Studies Were Produced in Discovery and
              Properly Authenticated by Mitmesser in Her Declaration. ........ 8

         2.    Mitmesser Reviewed the Studies Attached to Her
              Declaration Prior to the Start of Litigation. .............................. 9

         3.    The Studies Should Not Be Excluded on the Basis of
              Hearsay. ................................................................................... 9

    D.    The Court Should Not Exclude Mitmesser's Opinion in Her
         Declaration about the Studies NBTY Relied On Because Any
         Failure to Designate Was Harmless. .................................................. 12

         1.    Plaintiffs Deposed Mitmesser About Sixteen of the
              Studies Attached to Her Declaration. ...................................... 13

         2.    Because Plaintiffs Could Have Sought to Depose
              Mitmesser Again After Defendants Produced Two
              Additional Studies, but Chose Not to, They Should Not
              Now Be Permitted to Exclude Mitmesser's Opinion of
              Those Two Studies. .................................................................. 15

         3.    Mit█████r's Declaration Reflected Nothing New About
              the ███████ Study and Therefore the Motion to Exclude
              Her ███████ments About the Study Should Be Denied. ............... 16

    E.    Even if this Court Finds that Mitmesser Was a Non-Reporting
         Expert for Class Certification, this Court Should Not Vitiate
          Any Otherwise Applicable Privileges ................................................ 17

III.    CONCLUSION ......................................................................................... 18

1

2

# <u>TABLE OF AUTHORITIES</u>

Page(s)

3

**Cases**

4

*Blair v. CBE Grp., Inc.*,
  309 F.R.D. 621 (S.D. Cal. 2015) ......................................................... 10

5

*Doe v. City of San Diego*,
  2013 WL 3989193 (S.D. Cal. Aug. 1, 2013) ................................... 7, 13

6

7

*Dominguez v. Schwarzenegger*,
  270 F.R.D. 477 (N.D. Cal. 2010) ......................................................... 12

8

*Downey v. Bob's Disc. Furniture Holdings, Inc.*,
  633 F.3d 1 (1st Cir. 2011) ....................................................................... 7

9

10

*Durham v. Cty. of Maui*,
  2011 WL 2532690 (D. Haw. June 23, 2011) ....................................... 14

11

*Ellis v. Costco Wholesale Corp.*,
  657 F. 3d 970 (9th Cir. 2011) ............................................................... 10

12

13

*F.D.S. Marine, LLC v. Brix Mar. Co.*,
  211 F.R.D. 396 (D. Or. 2001) .......................................................... 4, 14

14

*Faulk v. Sears Roebuck & Co.*,
  2013 WL 1703378 (N.D. Cal. Apr. 19, 2013) ..................................... 10

15

16

*In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015) ................................................... 11

17

*John v. Rogers*,
  2015 WL 11233123 (W.D. Wash. Apr. 8, 2015) ................................ 15

18

19

*Kelly v. MTS Inc.*,
  5 F. App'x 755 (9th Cir. 2001) ............................................................. 14

20

*Lanard Toys, Ltd. v. Novelty, Inc.*,
  375 Fed. Appx. 705 (9th Cir. 2010) ..................................................... 12

21

22

*Navajo Nation v. Norris*,
  189 F.R.D. 610 (E.D. Wash. 1999) ......................................................... 6

23

*PacifiCorp v. Nw. Pipeline GP*,
  879 F. Supp. 2d 1171 (D. Or. 2012) .................................................... 17

24

*Parkinson v. Hyundai Motor Am.*,
  258 F.R.D. 580 (C.D. Cal. 2008) ......................................................... 12

25

26

*Prieto v. Malgor*,
  361 F.3d 1313 (11th Cir. 2004) .............................................................. 5

27

28

DEFENDANTS' MEMORANDUM IOT                    ii                    CASE NO.: 3:14-CV-02616-CAB-RBB
MOTION TO STRIKE MITMESSER                                          CASE NO.: 3:15-CV-00709-CAB-RBB

141059.1

*Reese v. Cty. of Sacramento*,
    2015 WL 6460312 (E.D. Cal. Oct. 26, 2015)......................................................13

*Russell v. Daiichi-Sankyo, Inc.*,
    2012 WL 1805038 (D. Mont. May 17, 2012)......................................................14

*Salazar v. A & J Const. of Montana, Inc.*,
    2012 WL 4092421 (D. Mont. Sept. 17, 2012)......................................................14

*Shapardon v. W. Beach Estates*,
    172 F.R.D. 415 (D. Haw. 1997)......................................................6

*Simon v. Healthways, Inc.*,
    2015 WL 10015953 (C.D. Cal. Dec. 17, 2015)......................................................11

*Sturm v. Davlyn Investments, Inc.*,
    2013 WL 8604661 (C.D. Cal. Nov. 6, 2013)......................................................15

*Syed v. M-I, L.L.C.*,
    2014 WL 6685966 (E.D. Cal. Nov. 26, 2014)......................................................12

*United States v. Adam Bros. Farming*,
    2005 WL 5957827 (C.D. Cal. Jan. 25, 2005)......................................................6

*United States v. Sierra Pac. Indus.*,
    2011 WL 2119078 (E.D. Cal. May 26, 2011)......................................................17

*Van Daele Dev. Corp. v. Steadfast Ins. Co.*,
    2014 WL 12564277 (C.D. Cal. Oct. 9, 2014)......................................................5

*Wal-Mart v. Dukes*,
    564 U.S. 338 (2011)......................................................11

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013)......................................................11

**Rules**

Fed. R. Civ. P. 26(a)(2)(B) ......................................................5, 6, 7

Fed. R. Civ. P. 26(a)(2)(C) ......................................................13

Fed. R. Civ. P. 26(b)(4) ......................................................18

Fed. R. Civ. P. 30(b)(6) ......................................................13

141059.1

1                  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2 **I.**     <u>**INTRODUCTION**</u>

3      Defendant NBTY's Senior Director of Nutrition and Scientific Affairs,

4 Susan Mitmesser, whose declaration Plaintiffs seek to exclude, testified both at

5 deposition and in her declaration that NBTY maintains a file of ginkgo biloba

6 studies that Defendants relied on to substantiate the ginkgo product labels at issue.

7 In her deposition, Mitmesser summarized the findings of those studies and

8 explained why Defendants relied on them. Although Plaintiffs contend Mitmesser

9 used her specialized knowledge to opine on whether ginkgo provides the benefits

10 on the product labels at issue, Mitmesser actually testified about (1) *what NBTY*

11 *relied on* in making the statements on its ginkgo labels and (2) *why* NBTY relied

12 on those studies. This fundamental distinction explains why Defendants believed

13 Mitmesser to be a percipient witness and did not designate her as an expert for

14 purposes of class certification.

15      Even assuming *arguendo* this Court disagrees, Defendants' failure to

16 designate Mitmesser as an expert for class certification would be harmless error,

17 making exclusion of her declaration a disproportionate and unnecessary sanction.

18 Although Plaintiffs argue they will be prejudiced if the declaration is admitted,

19 they concede they deposed Mitmesser about sixteen of the eighteen attached

20 studies, at which time they questioned her about her opinion on each of them.

21 Mot. at 17. Because Defendants' treatment of Mitmesser as a lay witness resulted

22 in no prejudice to Plaintiffs, her opinions on the sixteen studies can be considered

23 in ruling on class certification.

24      Plaintiffs have also moved to exclude all of the studies attached to

25 Mitmesser's declaration, though they provide reasons as to only three of the

26 eighteen. Those three studies— ██████████ , produced after the deposition, and

27 ██████ , discussed at Mitmesser's deposition—should also be considered in ruling

28

1  on class certification.  Regardless of this Court's conclusion regarding Mitmesser
2  and her opinions of the studies, the studies speak for themselves, were produced in
3  discovery, and were authenticated by Mitmesser, and therefore should be
4  considered in evaluating Defendants' arguments that (a) diseased populations have
5  been shown to benefit from ginkgo, making their inclusion in the class fatal to
6  predominance; and (b) gingko offers other benefits, such as improved blood flow,
7  which would result in a class with many uninjured members.
8       Although Plaintiffs incorrectly contend Defendants failed to produce the
9  ████████████ studies in discovery and thus claim unfair surprise, Mot. at 17,
10 Defendants produced those studies to Plaintiffs in supplemental productions on
11 November 4 and November 28, 2016.  If Plaintiffs wanted to question Mitmesser
12 about these two additional studies, they simply could have asked to depose her a
13 second time, but chose not to.
14      Plaintiff's claim that the studies are hearsay should likewise be rejected
15 because, even if technically hearsay, Defendants were merely providing a peek at
16 the merits as the Supreme Court has found is often necessary at class certification.
17 Because class certification does not result in ultimate findings of fact, evidentiary
18 standards are much more lenient than at summary judgment or trial.  Accordingly,
19 the remaining two studies, as well as Mitmesser's conclusions on them, also should
20 be considered in ruling on class certification.
21      The third study Plaintiffs seek to exclude is the ████ study (and
22 Mitmesser's opinion on that study) on the basis that, although Mitmesser was
23 questioned about it at deposition, she altered her testimony about the study in her
24 declaration.  Mot. at 10.  Plaintiffs are misinterpreting Mitmesser's declaration,
25 which contained no new opinions about the ████ study.  Rather, as Mitmesser
26 stated at deposition, she believes the study demonstrates ginkgo helps with blood
27 flow.  There is no basis to exclude it.
28

Finally, Plaintiffs argue they were prejudiced because, if Mitmesser were a non-retained expert, they believe they would have been able to vitiate attorney-client privilege and/or work product protection.  The law, however, is unsettled on when waiver would occur, and Plaintiffs cite no cases in which courts found waiver on similar facts.  Nor should this Court so find, particularly given Mitmesser was recently designated as a reporting expert for the merits phase of the case.  Because Mitmesser will be a reporting expert, the communications Plaintiffs state they were prejudiced by not obtaining will be explicitly protected by Rule 26.

Exclusionary sanctions exist to cure prejudice, not to punish or provide an undue advantage to another party.  There has been no harm to Plaintiffs here, who had ample notice of and access to Susan Mitmesser.  Therefore, Plaintiffs' motion to exclude the Mitmesser declaration and its exhibits should be denied.

## II.  **ARGUMENT**

### A.  **Mitmesser Testified to What NBTY Relied on and Why and Therefore Provided Percipient, Not Expert, Testimony**

On October 19, 2016, Mitmesser testified on behalf of Defendants as their 30(b)(6) witness on the following topics:

The scientific and/or medical literature (including research, tests and studies) constitutes the basis for the claims made in your Advertisements concerning the Ginkgo Biloba Products, including but not limited to whether ginkgo biloba in the Ginkgo Biloba Products provides the health benefits claimed by You.  (Topic 9)

All studies, their underlying raw data and related documents, which relate to or concern the efficacy or lack of efficacy of the Ginkgo Biloba Products, including the main ingredient, ginkgo biloba, including but not limited to the studies identified in Your productions . . . .  (Topic 10)

Any testing, studies, or trials relating to the commercially-available Ginkgo Biloba Products. (Topic 11)

1
2
3
4
5

> Any documents concerning . . . the advertising claims regarding the health benefits of the Ginkgo Biloba Products, including that the Ginkgo Biloba Products: "support healthy brain function and circulation" (topic 12);"help support memory, especially occasional mild memory problems associated with aging" (topic 13); and "help support mental alertness" (topic 14).

6 Mitmesser Depo. Tr. at 61:22-62:19 and Ex. 48 (Exs. B and E to Declaration of

7 Patricia Syverson in support of Pltf's Mot. ("Syverson Decl.")).  At that deposition,

8 Mitmesser answered questions about the sixteen studies Defendants had previously

9 produced as support for the statements on their ginkgo labels.  She also testified

10 that, as Senior Director of Nutrition and Scientific Affairs, her job duties included

11 being "responsible for the label integrity of [NBTY's] products, so product

12 maintenance. We insure the scientific credibility for label claims." *Id.* at 15:2-12

13 (Ex. B to Syverson Decl.).

14        Although Mitmesser undoubtedly possesses specialized knowledge given

15 her educational background (Ph.D. in Nutrition Sciences), she was merely

16 testifying to what *Defendants* relied on (and currently rely on) as support for their

17 ginkgo labels, which she is aware of as part of her job duties.  Because her

18 declaration simply echoed what was stated in her 30(b)(6) deposition, with the

19 exception that two additional studies were added, Defendants considered

20 Mitmesser to be a percipient, not expert, witness.  *See F.D.S. Marine, LLC v. Brix*

21 *Mar. Co.*, 211 F.R.D. 396, 401 (D. Or. 2001) ("This court concludes that Dixie

22 Stambaugh is not an 'expert' witness.  She is an employee of FDS Marine and was

23 not specially retained or employed to give an expert opinion. She was personally

24 involved in the billing to Foss and is permitted to testify, within reasonable bounds,

25 as to why that billing was reasonable based upon her personal knowledge and

26 experience.").

27
28

1   Although Plaintiffs cite a few cases in which those with specialized
2   knowledge were found to be experts, none have facts similar to those here.  For
3   example, Plaintiffs rely on *Prieto v. Malgor*, 361 F.3d 1313, 1318-19 (11th Cir.
4   2004), Mot. at 4, a case in which the court found that the police officer opining on
5   whether proper force had been used fit the definition in Rule 26(a)(2)(B) because
6   he "***had no connection*** to the specific events underlying this case apart from his
7   preparation for this trial.  He merely reviewed police reports and depositions
8   provided by counsel and offered expert opinions on the level of force exhibited by
9   Prieto and the appropriateness of the officers' response."  *Id.* (emphasis added).
10  Given Mitmesser was a 30(b)(6) witness on several key topics and is the Senior
11  Director of the department responsible for "label integrity," that same reasoning
12  does not apply to her.

**B.     Regardless of Whether Mitmesser Is Viewed as a Percipient or an Expert Witness, No Report Would Have Been Required.**

15      Plaintiffs argue they were prejudiced when deposing Mitmesser because
16  they did not have a written report of her findings beforehand, Mot. at 11.  But even
17  if Mitmesser had been designated as an expert, no report would have been
18  required.  Rule 26(a)(2)(B) states an expert must only provide a written report "if
19  the witness is one retained or specially employed to provide expert testimony in the
20  case or one whose duties as the party's employee regularly involve giving expert
21  testimony."  The record is clear that Mitmesser was not retained by Defendants to
22  testify, nor is it her job to regularly provide expert testimony.  Therefore, pursuant
23  to Rule 26, no report was required.  *See, e.g., Van Daele Dev. Corp. v. Steadfast*
24  *Ins. Co.*, 2014 WL 12564277, at *6 (C.D. Cal. Oct. 9, 2014) ("Here, Mr. Grewing
25  qualifies as an unretained expert because he offers his expert testimony as Vice-
26  President of Construction at Zurich American Insurance Company, bases his
27  opinions on his personal knowledge of the insurance policies at issue in this case,
28

and does not regularly give expert testimony."); *Shapardon v. W. Beach Estates*, 172 F.R.D. 415, 416 (D. Haw. 1997) ("[Rule 26] clearly contemplates two types of experts: those who may qualify as experts, but are not retained or specially employed, and those who are retained or specially employed to provide testimony in the case.  Written reports are required only for experts in the latter category.").

Plaintiffs state it is "critical to note" that Mitmesser has testified "three or four times" in four years.  Mot. at 5.  Testifying once a year, however, does not transform an employee from a percipient witness and/or unretained expert into one "whose duties regularly involve giving [expert] testimony," Mot. at 5.[1]  *See United States v. Adam Bros. Farming*, 2005 WL 5957827, at *5 (C.D. Cal. Jan. 25, 2005) (finding that "long-term employee of the EPA specializing in wetland delineation, who ha[d] previously testified as an expert witness in two other cases" was not required to prepare an expert report because "[t]he facts and circumstances of his involvement in this case do not suggest that Leidy was specially retained for purposes of giving expert testimony at trial.  Nor do the prior occasions of his testifying suggest that his job duties 'regularly involve' giving expert testimony."); *Navajo Nation v. Norris*, 189 F.R.D. 610, 612 (E.D. Wash. 1999) (holding that members of plaintiff's tribal council, who would be testifying as experts regarding tribal customs and traditions, were not required to prepare written reports because their duties as council members did not involve their regularly giving expert testimony in court and stating Rule 26(a)(2)(B) "has a specific category of employee experts who must provide a report: those who regularly testify.  Given the plain language of this specific category, by implication, those employees who do not regularly testify for the employer but are doing so in a particular case need not provide the report.").

---

[1] Notably, Plaintiffs cite no legal authority for this proposition.

1    Indeed, as the First Circuit Court of Appeals concluded after "[i]nterpreting

2  the words 'retained or specially employed' in a common-sense manner, consistent

3  with their plain meaning, . . . as long as an expert was not retained or specially

4  employed in connection with the litigation, and his opinion about causation is

5  premised on personal knowledge and observations made in the course of treatment,

6  no report is required under the terms of Rule 26(a)(2)(B)." *Downey v. Bob's Disc.*

7  *Furniture Holdings, Inc.*, 633 F.3d 1, 7 (1st Cir. 2011).  Another court in this

8  district reached a similar result in *Doe v. City of San Diego*, 2013 WL 3989193, at

9  *9 (S.D. Cal. Aug. 1, 2013), finding that a police officer did not need to provide an

10  expert report: "Plaintiff has not sought to designate Detective Adams as a retained

11  expert.  Rather, she is designated as a non-retained expert based on her role as a

12  percipient witness to certain facts of this case and the opinions she formed during

13  her investigation into police misconduct."  *Id.*; *see also Downey,* 633 F.3d at 6

14  (characterizing non-retained expert witness as "an actor with regard to the

15  occurrences from which the tapestry of the lawsuit was woven.  Put another way,

16  his opinion testimony arises not from his enlistment as an expert but, rather, from

17  his ground-level involvement in the events giving rise to the litigation. Thus, he

18  falls outside the compass of Rule 26(a)(2)(B).").

19    Because Mitmesser would not have been required to provide a report in the

20  first place even if she had been designated as an expert, Plaintiffs' claims of

21  prejudice due to not having received a report should be rejected.

22  **C.**    **There Is No Basis to Exclude the Eighteen Studies NBTY Relied**

23      **On to Substantiate Its Ginkgo Labels, All of Which Were**

24      **Produced in Discovery.**

25    Plaintiffs make several unpersuasive arguments in their efforts to exclude

26  the actual studies NBTY relied on to support its ginkgo labels—all of which were

27  produced in discovery.

28

1    First, Plaintiffs argue Mitmesser purportedly "did not review any of those

2    studies [until] after the start of this litigation," Mot. at 5, which blatantly

3    mischaracterizes her testimony and is just plain wrong.  Second, Plaintiffs contend

4    that two of the eighteen studies (▮▮▮▮▮▮▮) should be excluded for the

5    additional reason that they were not produced, Mot. at 17, which, again, is

6    incorrect.  Finally, Plaintiffs seek to exclude three of studies ▮▮▮▮▮ and

7    ▮▮▮)[2] because they contend they are hearsay.  Mot. at 12, 18.  Because

8    admissibility standards at class certification are much more relaxed than at

9    summary judgment and trial, in part because at this phase the Court is only being

10   given a preview of the merits, this objection is also misplaced.

11       **1.**    *All Eighteen Studies Were Produced in Discovery and Properly*

12              *Authenticated by Mitmesser in Her Declaration.*

13   Whether this Court views Mitmesser as an expert or a lay witness should

14   have no effect on the admissibility of the eighteen studies attached to her

15   declaration.  Plaintiffs concede that sixteen of the eighteen were produced to them.

16   Although they contend the other two were not produced prior to the close of the

17   discovery, Mot. at 17, they are mistaken.  Defendants produced the remaining two

18   studies by ▮▮▮▮▮ on November 4 and 28, 2016.  Declaration of William

19   A. Delgado, ¶ 2, Exs. A-C.

20   Plaintiffs also seem to be challenging the admissibility of the studies on the

21   basis that Mitmesser had no firsthand knowledge or involvement with them.

22   Mot. at 5.  However, Plaintiffs cite to no authority that would suggest that not

23   being involved in a study is a proper basis for exclusion, and Defendants are aware

24

25   [2]    Notably, although Plaintiffs seek to strike *all* studies in their motion-

26   including several also relied on by Defendants' expert, Dr. Edward Rosick, and
     again refer to excluding *all* of the exhibits i▮▮▮▮ brief, Mot. at 1, they only

27   specifically address *three* of the ▮▮▮▮▮▮ (one of the 16 studies discussed
     at Mitmesser's deposition) and ▮▮▮▮▮▮▮ he two studies not discussed at

28   deposition).

141059.1

1  of none.  Mitmesser properly authenticated the studies—sixteen in her deposition

2  and all eighteen in her declaration—which constitute the ginkgo "structure file,"

3  that is, the file NBTY maintains with documents supporting its product labels.

4  Mitmesser Depo. Tr. at 38:18-39:13 (Ex. B to Syverson Decl.).  Mitmesser then

5  explained at deposition why NBTY contends those sixteen studies support its

6  ginkgo product labels, and in her declaration explained why those sixteen--plus

7  two additional studies-- likewise support those labels.

8          **2.**    *Mitmesser Reviewed the Studies Attached to Her Declaration*

9                    *Prior to the Start of Litigation.*

10      While Mitmesser did state during her deposition that she had looked at the

11  studies being discussed in 2015, the entirety of her testimony makes clear that was

12  not the *first time* she looked at them, as Plaintiffs contend.  Mot. at 5.  Rather,

13  Mitmesser stated she reviewed those studies periodically in her role as Senior

14  Director of Nutrition and Scientific Affairs.  Mitmesser Depo. Tr. at 20:4-17

15  (Ex. D to Delgado Decl.).  Mitmesser also testified later when asked if she had

16  ever assessed the ginkgo claims prior to the lawsuit that yes, she had done so at the

17  time an NTP report challenged the safety of ginkgo.  *See id.* at 191:23-194:14.

18  That NTP report came out in 2013, *before* these lawsuits were filed.  *See* Ex. E to

19  Delgado Decl.  Plaintiffs' argument that Mitmesser has no firsthand knowledge of

20  these studies and reviewed them only to testify about them should therefore be

21  rejected.

22          **3.**    *The Studies Should Not Be Excluded on the Basis of Hearsay.*

23      Plaintiffs argue, without citation to any authority, that three of the studies

24  attached to Mitmesser's declaration ███████████████████

25  █ should be excluded on the basis of hearsay.  Mot. at 12, 18.  While it is difficult

26  to understand the basis of Plaintiffs' objection given their failure to cite supporting

27  authority, Defendants attempt to address it nonetheless.

28

1   The studies are admissible on the basis that there are "lenient evidentiary

2   standards" at class certification, making hearsay much less of a concern.  *See Blair*

3   *v. CBE Grp., Inc.*, 309 F.R.D. 621, 626–27 (S.D. Cal. 2015) (overruling hearsay

4   objection: "[T]he Court may consider inadmissible evidence at the class

5   certification stage.  The court need not address the ultimate admissibility of the

6   parties' proffered exhibits, documents and testimony at this stage, and may

7   consider them where necessary for resolution of the Motion for Class

8   Certification.") (internal citations and alternation omitted); *Faulk v. Sears Roebuck*

9   *& Co.*, 2013 WL 1703378, at *6 n. 5 (N.D. Cal. Apr. 19, 2013) (overruling hearsay

10   objection because "[f]or purposes of the class certification inquiry, the evidence

11   need not be presented in a form that would be admissible at trial. . . .  Given the

12   **relaxed evidentiary standard** at the class certification stage, the Court will

13   exercise its discretion and consider the evidence necessary for resolution of the

14   motion.") (emphasis added).

15   Although out of an abundance of caution, and in light of Plaintiffs' position,

16   Defendants have designated Mitmesser as a reporting expert *for the merits phase of*

17   *the case*, at the class certification stage, neither Mitmesser's opinions nor the

18   evidence attached to her declaration will result in an ultimate factual finding.

19   Rather, at this stage, instead of asking (as they will on summary judgment) for the

20   Court to rule that the ginkgo biloba labels at issue do not contain false statements,

21   Defendants simply have "previewed" the merits for the Court so that it may rule on

22   class certification.  *See Ellis v. Costco Wholesale Corp.*, 657 F. 3d 970, 981 (9th

23   Cir. 2011) ("[T]he merits of the class members' substantive claims are often highly

24   relevant when determining whether to certify a class.  More importantly, it is not

25   correct to say a district court may consider the merits to the extent that they overlap

26   with class certification issues; rather, a district court must consider the merits if

27   they overlap with Rule 23(a) requirements.").  For example, because Defendants

28

contend that Plaintiffs' inclusion of diseased people *and* healthy people in the same class defeats class certification, Defendants necessarily had to delve slightly into the merits to show why inclusion of both populations would create different answers at the liability phase, not a common answer as the law requires before a class can be certified. *See Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 543 (9th Cir. 2013) ("What matters to class certification is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common ***answers*** apt to drive the resolution of the litigation.") (quoting *Wal-Mart v. Dukes*, 564 U.S. 338, 350 (2011)) (emphasis added).

For that very reason, *i.e.*, that unlike a summary judgment motion, a class certification motion does not result in an ultimate determination on the merits, courts do not adhere to the same standards when considering evidence at the class certification phase and, instead, are more lenient in considering evidence such as hearsay. *See In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 965 n.147 (C.D. Cal. 2015) (rejecting objections to defendants' evidence in opposition to class certification: "Since a motion for class certification is a preliminary procedure, courts do not require strict adherence to the Federal Rules of Civil Procedure or the Federal Rules of Evidence. . . . At the class certification stage, the court makes no findings of fact . . . .) (internal quotations omitted); *Simon v. Healthways, Inc.*, 2015 WL 10015953, at *2 (C.D. Cal. Dec. 17, 2015) (rejecting objections to declarations submitted by defendant in opposition to class certification on the sole basis that courts may "consider inadmissible evidence in deciding whether it is appropriate to certify a class.").

Therefore, studies showing that class treatment would be inappropriate because ginkgo has been shown to have positive effects on those with memory problems and offers benefits such as blood flow should be considered regardless of

DEFENDANTS' MEMORANDUM IOT
MOTION TO STRIKE MITMESSER
11
CASE NO.: 3:14-CV-02616-CAB-RBB
CASE NO.: 3:15-CV-00709-CAB-RBB

141059.1

1   whether this Court finds it to be hearsay or not.[3]

2   **D.    The Court Should Not Exclude Mitmesser's Opinion in Her**

3   **Declaration about the Studies NBTY Relied On Because Any**

4   **Failure to Designate Was Harmless.**

5        Plaintiffs argue that, despite having had the opportunity to depose

6   Mitmesser in her role as NBTY's Person Most Knowledgeable on several topics,

7   and having questioned her extensively about sixteen of the eighteen studies

8   attached to her declaration, they will suffer prejudice if the statements in her

9   declaration about those studies are not stricken.  Mot. at 9.  Courts generally

10  consider the following factors, which "may properly guide a district court in

11  determining whether a violation of a discovery deadline is justified or

12  harmless . . . :  (1) prejudice or surprise to the party against whom the evidence is

13  offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of

14  disruption of the trial; and (4) bad faith or willfulness involved in not timely

15  disclosing the evidence."  *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705,

16  713 (9th Cir. 2010) (holding that court did not abuse its discretion in allowing

17  plaintiff's expert to testify, even though plaintiff did not serve a timely, complete

18

19

20  _____

    [3]     Although the Ninth Circuit has not opined on this issue, the "prevalent

21  practice" among district courts in this circuit is to consider evidence over
    objections such as hearsay at the class certification phase:

22          Some courts have found that only admissible evidence be
            considered at this stage of the proceedings.  However, the more

23          prevalent practice is to relax this requirement:  "Though the issue
            has not been squarely addressed by the Ninth Circuit, certain

24          courts have held that on a motion for class certification, the
            evidentiary rules are not strictly applied and courts can consider

25          evidence that may not be admissible at trial."

    *Syed v. M-I, L.L.C.*, 2014 WL 6685966, at *6 (E.D. Cal. Nov. 26, 2014) (internal

26  citations omitted), *quoting Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 599
    (C.D. Cal. 2008*); see also Dominguez v. Schwarzenegger*, 270 F.R.D. 477, 483

27  n. 5 (N.D. Cal. 2010) ("unlike evidence presented at a summary judgment stage,
    evidence presented in support of class certification need not be admissible at

28  trial").

DEFENDANTS' MEMORANDUM IOT              12              CASE NO.: 3:14-CV-02616-CAB-RBB
MOTION TO STRIKE MITMESSER                                 CASE NO.: 3:15-CV-00709-CAB-RBB

141059.1

1   expert report, because violation did not cause prejudice).  The burden is on the

2   party facing exclusion to prove the delay was justified or harmless.  *Id.*

3       Consideration of these factors here demonstrates that, regardless of this

4   Court's determination regarding Mitmesser's status for class certification (expert

5   or percipient witness), the declaration and exhibits should be admitted because

6   Plaintiffs have suffered no prejudice.  *See Reese v. Cty. of Sacramento*, 2015

7   WL 6460312, at *8 (E.D. Cal. Oct. 26, 2015) (denying motion to exclude

8   testimony of non-retained medical providers:  "The court need not decide whether

9   the subject witnesses' disclosures are sufficient under FRCP 26(a)(2)(C) since

10  Plaintiff has shown that any deficiency is harmless under the circumstances.").

11      **1.**    *Plaintiffs Deposed Mitmesser About Sixteen of the Studies*

12      *Attached to Her Declaration.*

13      First, and most importantly, Plaintiffs have not been prejudiced with respect

14  to sixteen of the eighteen studies or Mitmesser's opinion on them because

15  Plaintiffs questioned her about each and every one of those studies at her 30(b)(6)

16  deposition.  Plaintiffs attempt to show harm but cite cases that, even by their own

17  description, do not support exclusion here because the aggrieved party in those

18  cases was either (1) unable to depose the experts or rebut their opinions because

19  the experts were disclosed on the eve of trial, or (2) the party had produced

20  untimely reports from its retained experts, with no ability to cure the prejudice.

21  Mot. at 9.

22      None of those facts are present here.  Mitmesser was identified in

23  Defendants' Initial Disclosures and discovery responses, and Plaintiffs deposed

24  her pursuant to Fed. R. Civ. P. 30(b)(6) on the very topics that were the subject of

25  her declaration, *supra* at 3-4.  When presented with similar facts, numerous courts

26  have found that the moving party had not suffered prejudice, making exclusion

27  unduly harsh and unnecessary.  *See Doe v. City of San Diego*, 2013 WL 3989193,

28

DEFENDANTS' MEMORANDUM IOT
MOTION TO STRIKE MITMESSER       13        CASE NO.: 3:14-CV-02616-CAB-RBB
CASE NO.: 3:15-CV-00709-CAB-RBB

141059.1

1  at *9 (S.D. Cal. Aug. 1, 2013) ("[A]s to [harmlessness], the Court finds Plaintiff's

2  failure [to designate] can be easily remedied and that there is no harm to

3  Defendants.  Indeed, Defendants are well aware of Detective Adams' role in this

4  case and the opinions she set forth in her 2011 sex crimes report. In fact, Plaintiff

5  obtained the report from Defendants during discovery."); *Durham v. Cty. of Maui*,

6  2011 WL 2532690, at *5 (D. Haw. June 23, 2011) ("Plaintiffs will not be

7  prejudiced if Dr. Wong is permitted to testify at trial. Plaintiffs have known and

8  prepared for quite some time that Dr. Wong would be a witness at trial—Ford

9  identified Dr. Wong as a percipient expert witness . . . , the parties have deposed

10 Dr. Wong, the parties have repeatedly named Dr. Wong as a potential witness in

11 their disclosures and pretrial statements, and Plaintiffs have retained their own

12 expert to counter Dr. Wong's testimony."); *F.D.S. Marine, LLC v. Brix Mar. Co.*,

13 211 F.R.D. 396, 400 (D. Or. 2001) ("[I]n this case, FDS Marine has not yet

14 suffered any prejudice by Foss' failure to provide all of the information

15 concerning its experts as required by FRCP 26.  It still has more than two months

16 before trial on September 24, 2001, to prepare for examination of Foss' expert.").[4]

---

[4] *See also Kelly v. MTS Inc.*, 5 F. App'x 755, 757 (9th Cir. 2001) ("Tower's failure to provide a complete expert disclosure by August 10 was both harmless and substantially justified. Tower made a detailed disclosure regarding Pratt's testimony on September 4, 1998, a complete disclosure on September 24, and Kelly deposed Pratt for two days on October 5 and 6 at Tower's expense.  Kelly had ample notice of Pratt's testimony weeks before trial."); *Russell v. Daiichi-Sankyo, Inc.*, 2012 WL 1805038, at *6 (D. Mont. May 17, 2012) (denying motion to exclude because "the Court concludes that Russell's disclosure of Chaney and Fryman on the day discovery closed was both justified and harmless."); *Salazar v. A & J Const. of Montana, Inc.*, 2012 WL 4092421, at *12 (D. Mont. Sept. 17, 2012) (denying motion to exclude expert based on deficient report because "there is not unfair prejudice or surprise to A & J that cannot be cured. Trial of this matter is set to commence more than 10 weeks hence. A & J has ample time to depose Carlson and to retain its own expert should it choose to do so.")

DEFENDANTS' MEMORANDUM IOT          14          CASE NO.: 3:14-CV-02616-CAB-RBB
MOTION TO STRIKE MITMESSER                                    CASE NO.: 3:15-CV-00709-CAB-RBB

141059.1

1
2
3
4

**2.**   *Because Plaintiffs Could Have Sought to Depose Mitmesser*
*Again After Defendants Produced Two Additional Studies, but*
*Chose Not to, They Should Not Now Be Permitted to Exclude*
*Mitmesser's Opinion of Those Two Studies.*

5   With regard to the two remaining studies by █████████ not discussed

6   at Mitmesser's deposition, Plaintiffs had access to those studies, which were

7   produced to them prior to the close of discovery.  Delgado Decl., ¶ 2, Exs. A-C.

8   Plaintiffs could easily have requested a further deposition of Mitmesser.  Having

9   chosen not to do so, rewarding them by excluding the █████████ studies

10   would encourage gamesmanship, rather than curing prejudice.  *See John v.*

11   *Rogers*, 2015 WL 11233123, at *3 (W.D. Wash. Apr. 8, 2015) ("Defense counsel

12   had ample time to depose Mr. Van Blaricom with respect to his preliminary report

13   or Corporal Cagle's Rebuttal Report, which was also untimely, but chose not to do

14   so.  Accordingly, the Court finds exclusion of Mr. Van Blaricom's amended

15   report to be too harsh a remedy under the circumstances.") (internal citations

16   omitted); *Sturm v. Davlyn Investments, Inc.*, 2013 WL 8604661, at *8 (C.D. Cal.

17   Nov. 6, 2013) ("Due to [the inclusion of the physicians on the witness list] during

18   discovery and the fact that Defendants had the opportunity to depose the treating

19   physicians (but apparently chose not to), the Court concludes that Defendants will

20   not be unfairly prejudiced by allowing Plaintiffs to present the testimony of

21   treating physicians at trial.").

22   In any event, Mitmesser's opinion of the █████████ studies merely

23   reflects what those studies actually concluded, which is of course contained in the

24   studies themselves.  For class certification purposes, no findings of fact are being

25   made, thus no prejudice will result from Plaintiffs not questioning Mitmesser as to

26   her opinion on those studies (though they certainly can ask those questions during

27   the merits phase).  Although Plaintiffs argue they would have liked to contest

28

141059.1

those studies, for example, by questioning Mitmesser about one that did not use a placebo group, Mot. at 17-18, such challenges pertain to the weight, not admissibility, to be afforded them, and in any event relate to the merits, not class certification.

**3.**   *Mitmesser's Declaration Reflected Nothing New About the* ▮ *Study and Therefore the Motion to Exclude Her Statements About the Study Should Be Denied.*

Finally, Plaintiffs seek to exclude one particular study, arguing the ▮ study is hearsay, Mot. at 12, and that, although they deposed Mitmesser about the study, her declaration purportedly reaches a conclusion not stated in her deposition, resulting in prejudice, Mot. at 10. Both of these arguments are unavailing. First, as set forth above, evidentiary rules are relaxed at the class certification phase, *supra* at 10, and given Mitmesser authenticated the ▮ study as something NBTY relied on to support its product label, Mitmesser Depo Tr. at 78:10-80:25, 85:10-19 (Ex. D to Delgado Decl.), there is no reliability concern in any event.

Second, Plaintiffs are simply misinterpreting Mitmesser's declaration, which does *not* state that the ▮ study concludes anything about ginkgo's effect on memory, as Plaintiffs mistakenly contend. Mot. at 12. Rather, Mitmesser states: "In my professional opinion, this study provides evidence that Ginkgo biloba can *not only have* positive effects on memory and cognitive function *but can also* increase blo[od] flow velocity to the brain." Dkt. Nos. 98-1 (Petkevicious) and 112-1 (Korolshteyn) at ¶ 7(i.)(ii). A more reasonable reading of Mitmesser's declaration is that she was simply stating that *in addition to* having positive effects on memory and cognitive function—discussed throughout her declaration with regard to other studies—ginkgo "can also increase blo[od] flow velocity to the brain." *Id.* Because her deposition testimony stated exactly the same thing—"And was this a study that just studied blood flow? A. Yes." (Mot. at 11)—there is no

141059.1

1    basis to exclude the ██████ study on this basis.

2

3    **E.    Even if this Court Finds that Mitmesser Was a Non-Reporting**

4    **Expert for Class Certification, this Court Should Not Vitiate Any**

5    **Otherwise Applicable Privileges**

6    Plaintiffs argue Mitmesser's submission of a declaration containing nearly

7    the identical information provided in her 30(b)(6) deposition resulted in a waiver

8    of "some of the privilege afforded her as a 30(b)(6) witness."  Mot. at 13.

9    Plaintiffs rely on a few district court cases that have found waiver of certain

10   privileges as to non-reporting experts under different circumstances, but the law is

11   far from settled on this issue.  First, the Ninth Circuit has yet to opine on it.

12   *PacifiCorp v. Nw. Pipeline GP*, 879 F. Supp. 2d 1171, 1213 (D. Or. 2012)

13   ("Unfortunately, no Ninth Circuit authority clearly addresses whether designating a

14   witness as a non-reporting expert waives all applicable privileges and protections

15   of communications with that expert.").

16   Second, in revising Rule 26, the Civil Rules Advisory Committee purposely

17   left this as an open issue.  *See United States v. Sierra Pac. Indus.*, 2011 WL

18   2119078, at *7 (E.D. Cal. May 26, 2011) (discussing 2010 amendments to Rule

19   26:  "Thus, finding that there were certain circumstances under which broad

20   discovery should be allowed into a party attorney's communications with a non-

21   reporting employee expert witness, the committee refused to protect such

22   communications in all cases.  ***But the committee did not intend that such***

23   ***communications with non-reporting expert witnesses be discoverable in all***

24   ***cases***.").  In the *Sierra Pacific* case, the witnesses at issue were investigators,

25   exactly the type of employee-witnesses the Committee was concerned about

26   shielding communications with.  *Id.* at *6 ("The committee found reasons to

27   protect communications with some types of non-reporting experts, but not others. .

28

. .  The committee did not want to protect communications of one party's lawyer with "treating physicians, accident investigators, and the like.").  Therefore, the court held that privilege had been waived as to those two investigators, but made clear it was not finding there would always be a waiver as to non-reporting experts: "The court declines to hold that designating an individual as a non-reporting expert witness waives otherwise applicable privileges and protections in all cases, or even for all cases involving non-reporting employee expert witnesses." *Id.* at *10.

Mitmesser's testimony, which consists of her stating what studies NBTY relied on in generating ginkgo labels and explaining why those studies support the labels, hardly runs afoul of the Advisory Committee's concerns.  In any event, because Mitmesser recently was designated as a reporting expert, there is no need to reach this issue.

As discussed previously, Defendants designated Mitmesser as a reporting expert for the merits phase out of an abundance of caution.  Because Rule 26 explicitly protects communications with reporting experts, the types of communications Plaintiffs claim they should have been able to obtain are not available to them in any event.  *See* Fed. R. Civ. P. 26(b)(4) (protecting communications between the party's attorney and any reporting expert except to the extent related to compensation, facts or data the attorney provides and the expert considers in forming her opinions, and/or assumptions the attorney provides that the expert relies on).

## III.   <u>CONCLUSION</u>

Defendants respectfully request that the Court deny Plaintiff's motion to exclude because:

(a)     Defendants acted properly in not designating Susan Mitmesser or, if Mitmesser should have been designated as an expert, such error was harmless;

1    (b)    Regardless of whether the opinions of Susan Mitmesser expressed in

2 her declaration are admitted for purposes of class certification, the studies attached

3 to her declaration, which NBTY relied on, speak for themselves and should be

4 considered in evaluating Defendants' opposition to Plaintiffs' motions for class

5 certification.

6

7 Dated: January 20, 2017              WILLENKEN WILSON LOH &
                                       DELGADO LLP
8

9                                      By:  *s/ William A. Delgado*
10                                         William A. Delgado
                                           Attorneys for Defendants
11                                         NBTY, INC., NATURE'S BOUNTY,
                                           INC., REXALL SUNDOWN, INC.,
12                                         and COSTCO WHOLESALE
                                           CORPORATION
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MEMORANDUM IOT
MOTION TO STRIKE MITMESSER                19        CASE NO.: 3:14-CV-02616-CAB-RBB
                                                    CASE NO.: 3:15-CV-00709-CAB-RBB

141059.1