1  **BONNETT, FAIRBOURN, FRIEDMAN**
   **& BALINT, P.C.**
2  Patricia N. Syverson (CA SBN 203111)
   Manfred P. Muecke (CA SBN 222893)
3  600 W. Broadway, Suite 900
   San Diego, California 92101
4  psyverson@bffb.com
   mmuecke@bffb.com
5  Telephone: (619) 798-4593
   *Attorneys for Plaintiff Korolshetyn*
6
   **CARLSON LYNCH SWEET**
7  **KILPELA & CARPENTER, LLP**
   Todd D. Carpenter (CA 234464)
8  402 W Broadway, 29th Floor
   San Diego, California 92101
9  Telephone:  619-756-6994
   Fax: 619-756-6991
10 tcarpenter@carlsonlynch.com
   *Attorneys for Plaintiff Petkevicius*
11 *Additional Counsel on Signature Page*

12
                **IN THE UNITED STATES DISTRICT COURT**
13
              **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
14

15 | PAIGE PETKEVICIUS, on Behalf of | Case No.: 3:14-CV-02616-CAB-RBB |
   | Herself and All Others Similarly Situated, | Case No.: 3:15-CV-00709-CAB-RBB |

16 |        Plaintiff, | **PLAINTIFFS' REPLY IN SUPPORT** |
                      | **OF MOTION TO STRIKE** |
17 | vs. | **DECLARATION OF DR. SUSAN** |
           | **MITMESSER IN OPPOSITION TO** |
18 | NBTY, Inc., a Delaware Corporation; | **PLAINTIFFS' MOTIONS FOR** |
   | NATURE'S BOUNTY, INC. a New York | **CLASS CERTIFICATION** |
19 | Corporation; REXALL SUNDOWN, INC. |
20 | a Florida Corporation and Does 1-100, | Date:   TBD |
                                          | Time:   TBD |
21 |        Defendants. | Judge:  Hon. Cathy A. Bencivengo |
                        | Ctrm:   4C |
22

23 | TATIANA KOROLSHTEYN, on behalf |
   | of herself and all others similarly |
24 | situated, | **PER CHAMBERS' RULES, NO** |
               | **ORAL ARGUMENT UNLESS** |
25 |        Plaintiff, | **SEPARATELY ORDERED BY** |
   | vs. | **THE COURT** |
26 | COSTCO WHOLESALE |
   | CORPORATION and NBTY, INC., |
27 |        Defendants. |

28

---

## I.    **INTRODUCTION**

NBTY Senior Director of Nutrition and Scientific Affairs Dr. Susan Mitmesser claims to be "ultimately responsible for the statements on the labels of the Ginkgo Biloba products manufactured by NBTY," including those at issue in this litigation. (Mitmesser Decl., ¶3.) Defendants identified Dr. Mitmesser in response to a 30(b)(6) deposition notice, proffering her to testify "regarding the scientific and/or medical literature . . . which constitutes the basis for the claims made in [Defendants'] advertisements concerning the Ginkgo biloba products," including "whether Ginkgo biloba and the Ginkgo biloba products provide the health benefit claimed by [Defendants]." (Supp. Syverson Decl. Ex. A, Mitmesser Dep., 63:2-64:4.) Approximately two months after her deposition concluded, and one month after the deadline for disclosure of class certification experts, Dr. Mitmesser submitted an expert declaration purporting to provide "substantiation of every claim made on our product labels and the functionality of the product's ingredients," based on her review of 18 studies that Defendants maintain in their "confidential 'Structure Function Files.'"[1] (Mitmesser Decl., ¶4.) Therein, she concludes that "[i]n my professional opinion," each study "provides evidence" that Ginkgo promotes "increased blood flow," that it can help "support healthy brain function," and that it has "positive effects on" and/or "can help support" memory and cognitive function. (*Id.* at ¶¶ 7(a)-(r).)

Despite the fact that Dr. Mitmesser repeatedly and explicitly renders "professional opinions" formulated through: (a) application of her specialized knowledge and training in nutrition and biochemistry; and (b) her purported review of

---

[1] In their opening submission, Plaintiffs noted that Defendants previously produced only 16 of the 18 studies Dr. Mitmesser cited in her declaration. It was ultimately discovered that the other two had been produced, but that fact is not dispositive given that Dr. Mitmesser limited her 30(b)(6) deposition testimony to 16 studies.

the "totality of the science" (i.e., the studies referenced above),[2] Defendants failed to identify her as an expert, and refused to provide even the most cursory description of her opinions. This mandates exclusion of Dr. Mitmesser's declaration and testimony (and of the studies) because: (1) testimony with respect to issues that are "beyond the ken of the average juror" constitutes expert testimony that must be disclosed in accordance with the mandates of Rule 26;[3] (2) the effects a particular compound may have "on the human brain" is universally recognized to be a topic "well 'beyond the ken of the typical juror;'"[4] and (3) the failure to properly disclose Dr. Mitmesser's opinions was not harmless.

## II.   ARGUMENT

### A.   TESTIMONY AS TO THE EFFECTS A PARTICULAR COMPOUND MAY HAVE ON THE BRAIN IS, BY DEFINITION, EXPERT TESTIMONY.[5]

While Defendants tout Dr. Mitmesser's "specialized knowledge given her educational background (Ph.D. in Nutrition Sciences)," they inaccurately imply she did not utilize any of it in proffering her declaration, insisting that she "was merely testifying as to what *Defendants* relied on (and currently rely on) as support for their ginkgo labels, which she is aware of as part of her job." (Def. Opp. at 4 (italics in original.) This is false. Dr. Mitmesser <u>did not</u> simply answer the question of <u>what</u> information Defendants relied upon, she also tried to explain <u>why</u> they did so. While

---

[2] (Mitmesser Dep., 233:12-13.)
[3] *United States v. Plunk*, 153 F.3d 1011, 1017 (9th Cir. 1998).
[4] *Bell v. Miller*, 500 F.3d 149, 156 (2d Cir. 2007).
[5] Defendants seem to concede this fact, having now identified Dr. Mitmesser as an expert who wishes to testify "as to the bases for Defendants' substantiation of the claims made on the product labels" in the merits phase of this class action litigation. (*See* Supp. Syverson Decl. Ex. B, Def. Notice of Desig. Of Expert Witnesses for Purposes of Summ. Judg. and Trial at 2-3.)

testimony as to the former (the "what") can arguably be described as factual,[6] "professional opinions" as to the latter (the "why") require application of scientific, technical, or other specialized knowledge, and therefore patently cannot. Furthermore, all of this was covered in her 30(b)(6) deposition, and to the extent her declaration differs from that testimony it should be stricken (and if it does not differ, it is subject to exclusion as cumulative).

As noted above, in formulating her declaration Dr. Mitmesser reviewed a number of peer-reviewed articles, ultimately concluding that each "provides evidence" that Defendants' Ginkgo biloba products: (a) promote "increased blood flow;" (b) "support healthy brain function;" and/or (c) have "positive effects on" or "help support" memory and cognitive function. (Mitmesser Decl., at ¶¶ 7(a)-(r).) Given the foregoing, she opines that, in her "professional opinion," each study provides "substantiation of every claim made on [Defendants'] product labels and the functionality of the products ingredients," including "the active ingredients in the Gingko Products." (*Id.* at ¶¶4, 7(a)-(r).)

While Defendants insist they "considered Mitmesser to be a percipient, not expert witness,"[7] they fail to cite any case in which a court has found opinion testimony regarding the purported effects of a nutritional supplement (or any other compound) on blood flow or brain function to fall outside the ambit of expert testimony. That failure is not surprising given the fact that courts across the country – including the California federal district courts – have held to the contrary. *See, e.g., Miller v. Terhune*, 510 F. Supp. 2d 486, 504 (E.D. Cal. 2007) (holding that "expert testimony was needed to explain the effects of alcohol on the brain"); *Commonwealth v.*

---

[6] Though ultimately irrelevant because "'[t]he mere recitation of a list of studies is not a magical incantation paving the way to the witness stand unless it is accompanied by reasoned and scientifically accepted analysis.'" *O'Conner v. Commonwealth Edison Co.*, 807 F. Supp. 1376, 1392 (C.D. Ill. 1992) (citation omitted).

[7] (Def. Opp. at 4.)

REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION TO STRIKE DECLARATION OF DR. SUSAM MITMESSER

*Lloyd*, 702 N.E.2d 395, 397 (Mass Ct. App. 1998) (expert testimony required "to explain the alleged effects of Prozac on a person's ability to perceive or remember").

And nothing in *F.D.S. Marine v. Brix Mar. Co.* – the lone case Defendants cite in their brief – compels a different result. In that case, a billing dispute arose over certain repair/salvage services that F.D.S. provided to one of its customers. In the course of discovery, F.D.S. identified one of its owners, Cherie Stambaugh, as a potential fact witness who "had knowledge of salvage and invoice issues." 211 F.R.D. 396, at 401 (D. Or. 2001). Later, F.D.S. amended its discovery responses to list Stambaugh as an expert, and the defendant moved to exclude her testimony, arguing the disclosure was untimely. *Id.* The court held that Stambaugh was not an expert witness for purposes of that case given her status as an F.D.S. employee and her personal involvement in preparing the invoice that formed the basis of the dispute. *Id.* Accordingly, it permitted her to testify as a fact witness "as to why that billing was reasonable based upon her personal knowledge and experience." *Id.*

Unlike the employee-witness in *F.D.S. Marine*, Dr. Mitmesser had no "personal involvement" in determining whether the studies she cites supported Defendants' label claims at the time they were made. Indeed, she conceded that the health claims advanced on Defendants' labels "have been in our database for years," going back "as far as 2009 or ten," which predates her tenure with NBTY. (Mitmesser Dep., 21:10-15, 64:11-66:11.) Moreover, she admitted that the first time she actually read any of the studies was near the end of 2015, after Plaintiffs commenced these lawsuits. (*Id.* at 24:3-25:12, 69:11-70:24.)[8] Given those critical differences, Defendants' reliance on *F.D.S. Marine* is misplaced.

---

[8] Defendants cite testimony they claim confirms Dr. Mitmesser reviewed the studies in question before this litigation. (*See* Def. Opp. at 9.) However, Dr. Mitmesser explained that her team examined the "claims" on the packaging, not the studies. (Mitmesser Dep. 191:23-193:20.) The only study she read at that time was the NTP, which is not among those cited in her declaration. (*Id.*)

**B.    DEFENDANTS FAILED TO SATISFY THE RULE 26(a)(2) EXPERT DISCLOSURE REQUIREMENTS WITH RESPET TO DR. MITMESSER.**

**1.    Dr. Mitmesser was required to submit a written report.**

Unable to credibly dispute that Dr. Mitmesser's testimony implicates issues requiring expert analysis, or that she actually engaged in such analysis, Defendants are relegated to arguing that she was not required to provide an expert report. In this regard, Defendants contend that she was not "retained or specially employed to provide expert testimony," and that she is not someone "whose duties as the party's employee regularly involve giving expert testimony." (Def. Memo at 5, citing Fed. R. Civ. P. 26(a)(B)(2).) Neither contention has merit.

First, although not explicitly stated, it appears that Defendants believe Dr. Mitmesser's status as an NBTY employee, in and of itself, precludes application of the Rule 26 report requirement. Not so. The "dispositive question" with respect to the report requirement <u>is not</u> simply whether a particular witness is an employee, but rather "whether [her] opinion was developed . . . for purposes of litigation" or was formulated "as part of [her] duties as the party's employee." *Burreson v. Basf Corp.*, No. 2:13-cv-0066 TLN AC, 2014 U.S. Dist. LEXIS 117590, at *12 (E.D. Cal. Aug. 22, 2014); *see also Patel v. Gayes*, 984 F.2d 214, 218 (7th Cir. 1993) (explaining that "Rule 26 focuses not on the status of the witness but rather on the substance of the testimony"); *Prieto v. Malgor*, 361 F.3d 1313, 1381 (11th Cir. 2004) (applying Rule 26 report requirement to employee-witness who "merely reviewed" reports and depositions, and who "had no connection to the specific events underlying this case apart from his preparation for this trial"); *Day v. Conrail*, No. 95 Civ. 968 (PKL), 1996 U.S. Dist. LEXIS 6596, at *7 (S.D.N.Y. May 15, 1996) (noting that the witness, "although employed by the defendant, is being called solely or principally to offer expert testimony," and concluding "there is little justification for construing the rules

as excusing the report requirement").

As noted above, Dr. Mitmesser acknowledged that she did not work for Defendants when they initially determined the subject studies support their label claims, and she further confirmed that she did not review any of those studies until after the plaintiffs filed suit. This constitutes an admission: (a) that she has no connection to the specific events underlying this case apart from providing testimony to defend against Plaintiffs' claims; (b) that her opinions were developed specifically for that purpose; and (c) that although employed by Defendants, is being called "solely or principally" to offer expert testimony. Accordingly, she is subject to the Rule 26 report requirement, which she admittedly failed to satisfy.

Second, during the short time she has worked for NBTY (four years), Dr. Mitmesser has already been called upon to provide testimony three or four times. (Mitmesser Dep., 14:21-25, 21:11-23.) Thus, her duties as an NBTY employee do indeed "regularly involve giving expert testimony" within the meaning of Rule 26(a)(2)(B). Defendants contend otherwise, of course, but the cases they cite are once again easily distinguishable and entirely unpersuasive. *See United States v. Adam Bros. Farming, Inc.*, No. CV-00-7409 CAS (RNBx), 2005 U.S. Dist. LEXIS 45938, at *16-17 (C.D. Cal. Jan 25, 2005) (Rule 26 report requirement did not apply to employee-witness who worked for the EPA "for nearly 20 years," during which time he had testified "in two other cases"); *Navajo Nation v. Norris*, 189 F.R.D. 610, 612-13 (E.D. Wash. 1999) (refusing to strike employee-witnesses for failure to provide Rule 26 reports where there was no evidence they had previously provided expert testimony, and where it was thus "uncontradicted" that none of them "have been regularly used by [plaintiff] as expert witnesses").

As noted above, Dr. Mitmesser testifies approximately once a year – not once every ten years, or not ever, like the witnesses in the cases Defendants cite. Given that dispositive difference, Defendants' reliance on those cases is misplaced.

### 2.   Even if Dr. Mitmesser were not subject to the Rule 26 report requirement, Defendants' disclosure is insufficient.

Even if an expert witness is not required to provide a written report, the proffering party must still provide a disclosure that "include[s] both a statement of the subject matter on which the expert is expected to offer an opinion and 'a summary of facts and opinions to which the witness is expected to testify.'"[9] *Burreson*, 2014 U.S. Dist. LEXIS 117590, at *13 (quoting Fed. R. Civ. P. 26(a)(2)(C) (emphasis in original).) While Rule 26(a)(2)(C) does not demand "undue detail," it does require "some detail." *Kraja v. Bellagio*, LLC, No. 2:15-cv-01983-APG-NJK, 2016 U.S. Dist. LEXIS 54187, at *5 (D. Nev. Apr. 22, 2016). Thus, disclosures that are conclusory, "lacking factual content," or otherwise fail to identify the witness' actual opinions are insufficient. *Id.*

Illustrative of the foregoing principles is *Burreson v. Basf Corp.*, which involved claims of damage to blueberry crops caused by application of a BASF fungicide. During the course of discovery, the plaintiff identified a number of non-retained expert witnesses, including Gregory Willems and Tom Avinelis, two farmers allegedly affected by the defective fungicide. *Burreson*, 2014 U.S. Dist. LEXIS 117590, at *2. The disclosures with respect to each were as follows:

> Gregory Willems will testify on the proper method of planting blueberries, and the care of them, and what reasonable production should have been on the blueberry fields of Plaintiff.
>
> ***
>
> Mr. Avinelis will testify on the proper care and cultivation of blueberry bushes, in California and Oregon, the Plaintiff's method of farming of blueberries, and offer an opinion on what the reasonable expected production of blueberries from those field should have been, and what the net profit should have been.

---

[9] Of significance, "[b]oth the Rule 26(a)(2)(B) written report and the Rule 26(a)(2)(C) disclosure 'share the goal of increasing efficiency and reducing unfair surprise.'" *Burreson*, 2014 U.S. Dist. LEXIS 117590, at *8 (citation omitted).

*Id.* at \*10-11.

BASF filed a motion to strike, which the court granted, concluding that the foregoing disclosures failed to satisfy even the "lesser disclosure requirement" of Rule 26(a)(2)(C). *Id.* at \*12. Specifically, they were improperly "limited to descriptions of the subject matter," and "[t]hey do not include a summary of the witness' opinions" (i.e., they "do not set forth either witness's opinion of the best way to plant blueberries, what plaintiff's fields should have produced, or what plaintiff's profits should have been"). *Id.* at \*13. Because "the disclosures are deficient," the court precluded Messrs. Willems and Avinelis from testifying. *Id.*

In this case, the entirety of Defendants' disclosure with respect to Dr. Mitmesser is found in their initial Rule 26(a) disclosures,[10] where they identified her as an individual "likely to have discoverable information" as to "NBTY's support for product claims; efficacy of Ginkgo Biloba." Like those held to be deficient in *Burreson*, Defendants' disclosure here does nothing more than identify (and then just barely) the subject matter of Dr. Mitmesser's knowledge while omitting "a summary of the facts and opinions to which the witness is expected to testify." Absent that summary, Defendants' disclosure is per se deficient.[11]

## C.   DEFENDANTS FAILURE TO COMPLY WITH THE RULE 26 DISCLOSURE REQUIREMENTS WAS NOT HARMLESS.

The parties were required to disclose class certification experts by November 15, 2016, and fact discovery closed on December 13. On December 16, after both deadlines had expired, Defendants produced Dr. Mitmesser's declaration and corresponding expert opinions. This indisputable violation of the scheduling order is,

---

[10] Previously submitted with Plaintiffs' opening brief as Exhibit A to the Declaration of Patricia N. Syverson.

[11] Defendants do not respond to Plaintiffs' contention that Dr. Mitmesser is subject to the Rule 26(a)(2)(C) disclosure requirement, thus conceding the point. (*See* Def. Opp. Part B; Plfs' Mem. at 6-8.)

in and of itself, a sufficient basis to strike the declaration, as Defendants would presumably agree, having previously (and successfully) argued:

> A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril. . . Disregard of the order would undermine the Court's ability to control its docket, disrupt the agreed-upon course of litigation, and reward the indolent and cavalier.

(Def. Opp. to Motion to Modify Scheduling Order (ECF No. 102) at 1 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992).)

But even if the Court were to ignore Defendants' own words, exclusion would remain appropriate under Rule 37(c)(1), which provides that if a party fails to properly identify an expert, that party "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless."[12] "The burden to prove harmlessness," of course, "is on the party seeking to avoid Rule 37's exclusionary sanction." *Goldman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011).

Defendants insist they have satisfied their burden, arguing that Plaintiffs have not been prejudiced because they deposed Dr. Mitmesser with respect to the studies, and because "they could have easily requested a further deposition" if they were unsatisfied, but have "chosen not to do so." (Def. Memo. at 15.) In their opening submission, Plaintiffs explained at length the various forms of prejudice they have suffered as a result of Defendants inexcusably dilatory discovery conduct. (*See* Memo in Supp. of Mot. to Strike Mitmesser Decl. at 9-19.) Given that fulsome exposition, it is sufficient for purposes of this reply to note that courts have found prejudice to exist where the offending party's conduct resulted in otherwise unnecessary motion practice and/or delayed the progression of the case.

---

[12] Defendants do not argue that their failure to properly identify Dr. Mitmesser was justified, just that it was harmless.

REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION TO STRIKE DECLARATION OF DR. SUSAM MITMESSER

In *Kraja v. Bellagio,* for example, the plaintiffs identified four treating physicians as expert witnesses, but failed to provide an adequate disclosure of their opinions. The defendants moved to strike, and Kraja resisted, arguing the failure was harmless because he had amended his disclosures, because the court granted an extension of the rebuttal expert deadline, and because the trial date remained far off. *Kraja*, 2016 U.S. Dist. LEXIS 54187, at *7. The court disagreed and struck the experts, noting that the "extension and the motion practice that followed were caused by Plaintiff's defective disclosures," and going on to reason that "Plaintiff should not be able to benefit from the extension caused by his failure to comply with the Federal Rules of Civil Procedure." *Id.* at *8. The court next explained that "rather than establish that Plaintiff's conduct was harmless, the necessity of this extension demonstrates that Plaintiff's disclosures undermined the Court's ability to manage its docket and delayed the expeditious resolution of this case." *Id.* Finally, it concluded that the defendants had been prejudiced because they were entitled to information about plaintiff's experts on the schedule set by the court, and because as a result of Kraja's inadequate disclosures they "were deprived of the benefit to which they were entitled under Rule 26(a)(2)(C)." *Id.* at *8-9.

Likewise, here, Plaintiffs were "deprived of the benefit to which they were entitled under Rule 26(a)(2)(C);" i.e., timely disclosure of Defendants' expert opinions. Briefing on class certification has closed, and re-opening Dr. Mitmesser's deposition so Plaintiffs can make inquiries they could have made—absent Defendants' failure— would disrupt that process, resulting in considerable delay and additional prejudice. Clearly, Defendants' failure was not harmless.

## III.   **CONCLUSION**

For the foregoing reasons, Dr. Mitmesser's declaration and testimony should be stricken.

REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION TO STRIKE DECLARATION OF DR. SUSAM MITMESSER

| | |
|---|---|
| 1 | Dated:   February 3, 2017 |
| 2 | |

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.

 /s/ Patricia N. Syverson
BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Patricia N. Syverson (203111)
Manfred P. Muecke (222893)
600 W. Broadway, Suite 900
San Diego, California 92101
psyverson@bffb.com
mmuecke@bffb.com
Telephone:  (619) 798-4593

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Elaine A. Ryan (*Admitted Pro Hac Vice*)
2325 E. Camelback Rd., Suite 300
Phoenix, AZ 85016
eryan@bffb.com
Telephone:  (602) 274-1100

BOODELL & DOMANSKIS, LLC
Stewart M. Weltman (*Admitted Pro Hac Vice*)
Max A. Stein (*Admitted Pro Hac Vice*)
One North Franklin, Suite 1200
Chicago, IL 60606
SWeltman@boodlaw.com
mstein@boodlaw.com
Telephone: (312) 938-1670

SIPRUT PC
Joseph Siprut (*To be Admitted Pro Hac Vice*)
17 North State Street
Suite 1600
Chicago, IL  60602
Jsiprut@siprut.com
Telephone: 312.236.0000

*Attorneys for Plaintiff Korolshteyn*

**CARLSON LYNCH SWEET
KILPELA & CARPENTER, LLP**
Todd D. Carpenter (CA 234464)
402 W Broadway, 29th Floor
San Diego, California 92101
Telephone:  619-756-6994
Fax: 619-756-6991
tcarpenter@carlsonlynch.com

**MILSTEIN ADELMAN JACKSON,
FAIRCHILD & WADE, LLP**

REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION TO STRIKE DECLARATION OF DR. SUSAM MITMESSER

Gillian L. Wade (CA 229124)
Sara D. Avila (CA 263213)
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Telephone 888-835-8055
Fax: 310-396-9635
gwade@majfw.com
savila@majfw.com

**HALUNEN LAW**
Melissa W. Wolchansky
1650 IDS Center
80 So. 8th Street
Minneapolis, MN 55402
Telephone: 612-605-4098
Fax: 612-605-4099
wolchansky@halunenlaw.com

**PATTERSON LAW GROUP**
James R. Patterson (CA 211102)
402 W Broadway, 29th Floor
San Diego, CA 92101
Telephone: 619-756-6994
Fax: 619-756-6991
jim@pattersonlawgroup.com

*Attorneys for Plaintiff Petkevicius*

REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION TO STRIKE DECLARATION OF DR. SUSAM MITMESSER

# CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed the 3rd day of February 2017.

*/s/ Patricia N. Syverson*
Patricia N. Syverson

REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION TO STRIKE DECLARATION OF DR. SUSAM MITMESSER