1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16

| | |
|---|---|
| TATIANA KOROLSHTEYN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION and NBTY, INC.,<br><br>Defendants. | Case No.:  3:15-cv-709-CAB-RBB<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**<br><br>[Doc. No. 105] |

17
18
19
20

This matter is before the Court on Plaintiff's motion for class certification.  The motion has been fully briefed, and the Court deems it suitable for submission without oral argument.  As discussed below, the motion is granted.

21

### I.    Background

22
23
24
25
26
27
28

This case arises out of Defendants' alleged false statements about the health benefits of TruNature Gingko Biloba with Vinpocetine ("TruNature Gingko"), which is manufactured by Defendant NBTY, Inc. ("NBTY") and sold at the stores of Defendant Costco Wholesale Corporation ("Costco").  The labels of TruNature Gingko represent that the product "supports alertness & memory," that "Gingko biloba can help with mental clarity and memory," and that "[i]t also helps maintain healthy blood flow to the brain to assist mental clarity and memory, especially occasional mild memory problems associated

1

with aging." [Doc. No. 100 at ¶ 1.]  According to the TAC, these representations are false because studies show that gingko biloba and vinpocetine do not provide any mental clarity, memory or mental alertness benefits.  [*Id.* at ¶ 2.]  Plaintiff Tatiana Korolshteyn alleges she bought a bottle of TruNature Gingko based on the allegedly false representations on the product label and filed this lawsuit on behalf of herself and a putative class of consumers who purchased TruNature Gingko in California.  The TAC asserts two claims: (1) violation of California's unfair competition law (the "UCL"), California Business & Professions Code § 17200 *et seq.*; and (2) violation of California's Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et seq.*  The prayer for relief asks for restitution and disgorgement of Defendants' revenues, actual, statutory and punitive damages, and attorneys' fees and costs.  [*Id.* at p. 15.]  She now moves to certify a class.

## II.    Legal Standard for Class Certification

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal–Mart v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotation marks omitted).  "Parties seeking class certification must satisfy each of the four requirements of [Federal Rule of Civil Procedure] 23(a) . . . and at least one of the requirements of Rule 23(b)."  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017).  "Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class).  *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (internal quotation marks, brackets, and ellipses omitted).

Plaintiff here contends that in addition to satisfying these four Rule 23(a) requirements, class certification is warranted under Rule 23(b)(3).  Rule 23(b)(3) "requires that common questions of law or fact found under Rule 23(a)(2) 'predominate over any questions affecting only individual members, and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy.'" *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1132 (9th Cir. 2016).

In considering class certification, district courts must engage in "a rigorous analysis" to determine whether "the prerequisites of Rule 23(a) have been satisfied." *Dukes*, 564 U.S. at 350-51 (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). Thus, "a district court *must* consider the merits if they overlap with the Rule 23(a) requirements." *Id.* (*emphasis* in original). At the same time, courts "consider merits questions at the class certification stage *only* to the extent they are relevant to whether Rule 23 requirements have been met." *Torres*, 835 F.3d at 1133 (*emphasis* added). "While some evaluation of the merits frequently cannot be helped in evaluating commonality, that likelihood of overlap with the merits is no license to engage in free-ranging merits inquiries at the certification stage." *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014) (internal quotation marks and citation omitted). "A court, when asked to certify a class, is merely to decide a suitable method of adjudicating the case and should not turn class certification into a mini-trial on the merits." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015).

### III.   Motions to Exclude or Strike Declarations and Expert Reports

"On a motion for class certification, the Court makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims." *Keilholtz v. Lennox Hearth Prod. Inc.*, 268 F.R.D. 330, 337 (N.D. Cal. 2010). Thus, at the class certification stage, "the Court may consider evidence that may not be admissible at trial." *Aguirre v. Genesis Logistics*, No. SACV1200687JVSANX, 2016 WL 6573986, at *2 (C.D. Cal. July 20, 2016). One court even noted that a "district court may certify a class without supporting evidence." *Dominguez v. Schwarzenegger*, 270 F.R.D. 477, 483 n.5 (N.D. Cal. 2010) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992)). "Accordingly, the court need not address the ultimate admissibility of the parties' proffered exhibits,

documents and testimony at this stage, and may consider them where necessary for resolution of the motion for class certification." *Aguirre*, 2016 WL 6573986, at *2 (internal quotation marks and brackets omitted).

Here, in conjunction with the motion, the parties have combined to submit numerous declarations and expert reports and dozens of exhibits that they claim support their arguments for or against class certification. Perhaps unsurprisingly, these voluminous evidentiary submissions have yielded three separate motions to exclude the reports or declarations of four different experts or witnesses purportedly offering expert testimony. That the evidence does or does not support the putative class' claims is a separate question from whether a plaintiff may assert those claims on behalf of a class. The parties may disagree about the admissibility various expert reports and other declarations, but the admissibility of this testimony is largely inconsequential to the Court's current task of determining whether Plaintiff's claims are appropriate for determination on a classwide basis. Accordingly, the motions to exclude or strike the declarations, testimony or reports of Richard Bazinet, Beth Snitz, Susan Mitmesser, and Edward Rosick are all denied without prejudice. The parties are welcome to re-file these motions in connection with summary judgment motions or as motions in limine consistent with the deadlines set by the applicable case management orders and local rules.

## IV. Discussion

### A. The Proposed Class(es)

Plaintiff seeks certification of a California-only UCL Class and a California-only CLRA Class, but the classes are identical: "All California consumers who, within the applicable statute of limitations, purchased TruNature Gingko Biloba with Vinpocetine until the date notice is disseminated." [Doc. No. 107 at 20.] "For purposes of class certification, the UCL . . . and CLRA are materially indistinguishable." *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK (MRWx), 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014). "[C]lass certification of UCL claims is available only to those class members who were actually exposed to the business practices at issue." *Berger v. Home Depot USA,*

*Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014).

"To state a claim under the UCL . . . 'based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived.'" *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)). "This inquiry does not require 'individualized proof of deception, reliance and injury.'" *Id.* (quoting *In re Tobacco II Cases*, 46 Cal. 4th at 320). "Thus, a court need not make individual determinations regarding entitlement to restitution. Instead, restitution is available on a classwide basis once the class representative makes the threshold showing of liability under the UCL." *Id.* at 986.

Meanwhile, "[u]nlike the UCL, the CLRA demands that each potential class member have both an actual injury and show that the injury was caused by the challenged practice. However, if a material misrepresentation has been made to the entire class, an inference of reliance arises as to the class." *Berger*, 741 F.3d at 1069-70 (internal citation and quotation marks omitted). "As a general rule, materiality may be established by common proof '[b]ecause materiality is judged according to an objective standard,' and so '[t]he alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all [consumers] composing the class.'" *Mullins v. Premier Nutrition Corp.*, No. 13-cv-1271-RS, 2016 WL 1535057, at *5 (N.D. Cal. Apr. 15, 2016) (quoting *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1191 (2013)); *see also McCrary v. Elations Co., LLC*, No. EDCV 13-00242 JGB OP, 2014 WL 1779243, at *14 (C.D. Cal. Jan. 13, 2014) ("[T]he determination of materiality, and thus reliance, is determined using objective criteria that apply to the entire class and do not require individualized determination."); *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (Cal. Ct. App. 2010) ("Materiality of the alleged misrepresentation generally is judged by a 'reasonable man' standard.").

Here, the only alleged misrepresentations in question appeared on the labels of the products purchased by class members. Whether these representations were material to a

reasonable person can be determined on a classwide basis.   Therefore, the different requirements for UCL and CLRA claims do not warrant different outcomes in the class certification analysis.   For this reason, and because neither party makes arguments unique to either proposed class, the Court does not separately analyze whether the two proposed classes satisfy the requirements of Rule 23(a) and (b)(3).

### B.   Numerosity

The "numerosity" requirement is satisfied if the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Defendants do not dispute that this requirement is satisfied, and in light of evidence that Costco sold over 1 million units of TruNature Gingko to thousands of consumers during the class period, the putative class easily meets this requirement for class certification.

### C.   Typicality

"To demonstrate typicality, Plaintiffs must show that the named parties' claims are typical of the class." *Ellis*, 657 F.3d at 984; *see also* Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  "[W]hen determining typicality, the Court focuses on the defendant's conduct and the plaintiff's legal theory, not the specific facts from which the claim arises." *Allen v. Similasan Corp.*, 306 F.R.D. 635, 645 (S.D. Cal. 2015) (citing *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)).  "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Torres*, 835 F.3d at 1141 (quoting *Hanon*, 976 F.2d at 508)).

Here, Plaintiff's theory is that the statements on the labels of TruNature Gingko are false because it provides no health benefits.  Every class member was exposed to these statements on the labels of the TruNature Gingko they purchased.  According to Plaintiff, anyone who purchased TruNature Gingko suffered the same harm because they would not

have purchased TruNature Gingko but for these false statements and as a result paid money for a worthless product.  The wrongful conduct (the allegedly false statements) and the resulting harm (the amount paid to purchase TruNature Gingko) are the same.  In other words, none of Defendants' allegedly wrongful conduct is unique to the named plaintiff or any member of the proposed class.  Therefore, the typicality requirement is satisfied.

### D.   Adequacy

The "adequacy" requirement is satisfied if the class representative and the attorneys she hired "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Hanlon*, 150 F.3d at 1020.  Defendants do not contest that Plaintiff's counsel can adequately represent the class, but they argue that Korolshteyn is not an adequate named plaintiff because of what they deem to be credibility issues.  The Court is not persuaded.

Defendants rely on a conversation on Facebook between Korolshteyn and her friend Peter Crane, who is an attorney.  The transcript of this Facebook conversation indicates that Crane first advised her of the alleged worthlessness of Gingko biloba after she had purchased TruNature Gingko but before she had used it.  Defendants then point to Korolshteyn's deposition testimony that she took the product within a day or two of purchasing it, which would mean that she took it before her Facebook conversation with Crane.  [Doc. No. 112-26 at 18-20.][1]  However, the Facebook conversation transcript also makes clear that Korolshteyn had purchased TruNature Gingko before the Facebook conversation with Crane, and that she did so based on a hope that "it would help with sleepy mommy brain."  [Doc. No. 112-27 at 3.]  Moreover, at her deposition Korolshteyn testified that she read and relied on the label of the bottle before purchasing it.  [Doc. No. 112-26 at 14.]

---

[1] The deposition testimony is hardly clear in this regard.  Plaintiff purchased the product on October 29, 2014, and her conversation with Crane began several days later on November 3, 2014.  When asked at her deposition eighteen months later about when she first took TruNature Gingko, she estimated that she took it only once or twice either the day that she brought it home or the day after, but also stated that she couldn't recall exactly.  [Doc. No. 105-26 at 21-22.]

Ultimately, the evidence on which Defendants' rely does not necessarily undermine Korolshteyn's credibility or make her an inadequate representative plaintiff. The Facebook conversation and deposition transcript demonstrate that Korolshteyn's experience in purchasing TruNature Gingko is consistent with the plaintiff class' theory that the statements about health benefits on the TruNature Gingko packaging are material to the average consumer and that consumers rely on the statements when purchasing the product. For all of the reasons discussed below, when Korolshteyn took TruNature Gingko, or even if she took it at all, is irrelevant to the claims for which she seeks to represent the class. Accordingly, the adequacy requirement for class certification is satisfied.

### E.   Commonality and Predominance

To satisfy the commonality requirement, a plaintiff must establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the Ninth Circuit recently explained:

> Although Rule 23(a)(2) refers to common "questions of law or fact" in the plural, even a single common question will do. *Wal–Mart*, 131 S.Ct. at 2556. But because "'[a]ny competently crafted class complaint literally raises common questions,'" *id*. at 2551 (alteration in original) (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131–32 (2009)), courts should look for a "common contention" in determining whether putative class members' claims can be litigated together. *Id*. "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Thus, it is not just the common contention, but the answer to that contention, that is important: "What matters to class certification . . . is not the raising of common 'questions'—even in droves— but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (alterations in original) (quoting Nagareda, *supra*, at 132)."

*Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015).

"There is substantial overlap between the Rule 23(a)(2) commonality test and the Rule 23(b)(3) predominance tests, but the Rule 23(b)(3) test is 'far more demanding.'"

1   *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 666 (C.D. Cal. 2014) (quoting *Wolin v. Jaguar*

2   *Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010)); *see also Comcast Corp. v.*

3   *Behrend*, 133 S.Ct. 1426, 1432 (2013) ("If anything, Rule 23(b)(3)'s predominance

4   criterion is even more demanding than Rule 23(a)."). "Rule 23(b)(3) requires a showing

5   that *questions* common to the class predominate, not that those questions will be answered,

6   on the merits, in favor of the class." *Amgen*, 133 S. Ct. at 1191 (emphasis in original). To

7   satisfy Rule 23(b)(3), "the common questions must be a significant aspect of the case that

8   can be resolved for all members of the class in a single adjudication." *Berger*, 741 F.3d at

9   1068 (internal quotation marks and ellipses omitted).

10       "The Rule 23(b)(3) predominance inquiry asks the court to make a global

11   determination of whether common questions prevail over individualized ones. For

12   purposes of this analysis, an individual question is one where members of a proposed class

13   will need to present evidence that varies from member to member, while a common

14   question is one where the same evidence will suffice for each member to make a prima

15   facie showing or the issue is susceptible to generalized, class-wide proof." *Torres*, 835

16   F.3d at 1134 (citing *Tyson Foods v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016)) (internal

17   quotation marks and brackets omitted).

18       Plaintiff argues that the common questions that predominate here include whether

19   the statements on the product label are false, and whether those statements are material and

20   likely to deceive a reasonable consumer.  [Doc. No. 107 at 22.]  "By definition, class

21   members were exposed to these labeling claims, creating a 'common core of salient facts.'"

22   *McCrary*, 2014 WL 1779243, at *10 (quoting *Hanlon*, 150 F.3d at 1019-20).  Courts

23   routinely certify consumer classes where the claims concerned false statements about the

24   efficacy of nutritional supplements or homeopathic remedies in part because the plaintiffs'

25   argument is that the product is worthless because the advertised benefits are not true. *See,*

26   *e.g., Allen v. Similasan Corp.*, 306 F.R.D. 635, 651 (S.D. Cal. 2015) (certifying class

27   concerning claims of false statements of effectiveness of homeopathic ear, nose, and eye

28   remedies); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 672 (C.D. Cal. 2014) (certifying class

for claims of false statements of effectiveness of various homeopathic remedies); *Forcellati*, 2014 WL 1410264, at *12 (certifying class for claims of false statements of effectiveness of various homeopathic cold and flu remedies); *cf. Ries v. Arizona Bev. USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) (finding commonality requirement satisfied as to questions of "whether the use of the terms 'All Natural' or '100% Natural' to advertise beverages that contain HFCS or citric acid violates the UCL, FAL, or CLRA").

Here, Plaintiff's entire lawsuit rides on her claim that TruNature Gingko provides no benefits and that the statements on the product labels are false. The answer to these questions will be the same for the entire class. Likewise, the determination of whether the statements on the label are material and likely to deceive a reasonable consumer will be the same for the entire class. The answers to these questions will resolve issues that are central to the validity of each class members' claims in one stroke. *Alcantar*, 800 F.3d at 1052. These common questions are not only more significant than other questions at issue in this suit, they are the most significant questions in this lawsuit. Therefore, these questions predominate over any individual questions that may arise.

Defendants argue that common questions do not predominate because some customers may have received a benefit from TruNature Gingko and thus are not entitled to damages. However, "[t]hat some people believe [Gingko biloba] provides benefits as advertised is beside the point. [Plaintiff's] 'claims do not rise or fall on whether individual consumers experienced health benefits, due to the placebo effect or otherwise. They rise or fall on whether [Defendant's] representations were deceptive." *Mullins v. Premier Nutrition Corp.*, 2016 WL 1535057, at *3 (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015)). "It stands to reason that a product that, in effect, has tricked people into thinking that they received a benefit should not be given credit for actually conferring a benefit." *Allen v. Hyland's Inc.*, 300 F.R.D. at 671 n.26. Moreover, "if Plaintiffs' theory is correct, the belief of some users that the products are effective would necessarily be attributable to the placebo effect. Thus, each of Defendants' arguments goes to the merits of Plaintiffs' case, but they fail to demonstrate that Plaintiffs' claims are not

10

subject to common proof." *Id.* at 661; *Forcellati*, 2014 WL 1410264, at *9 (holding that if the plaintiff could prove allegations that the products' effectiveness is solely a placebo effect, "Defendants' representations about the products' effectiveness would constitute false advertising 'even though some consumers may experience positive results'") (citing *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1100 (9th Cir. 1994)); *see also Torres*, 835 F.3d at 1137 ("[F]ortuitous non-injury to a subset of class members does not necessarily defeat certification of the entire class, particularly as the district court is well situated to winnow out those non-injured members at the damages phase of the litigation, or to refine the class definition.").[2]   Ultimately, if Plaintiff can prove that the class would not have purchased TruNature Gingko but for the alleged false statements on the label, class members are entitled to full restitution of the purchase price regardless of any benefit received after the purchase.  *See Pulaski & Middleman, LLC*, 802 F.3d at 989 (holding that the restitution calculation under the UCL "need not account for benefits received after purchase because the focus is on the value of the service at the time of purchase," meaning "the focus is on the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information.").

Defendants also speculate that class members may have purchased TruNature Gingko based on Defendants' competitors' advertising about the benefits of Gingko biloba or based on the instructions of doctors or others who recommended Gingko biloba.  That

---

[2] Defendants argue throughout their opposition that, contrary to Plaintiff's allegations and evidence, Gingko biloba helps some consumers with memory problems.  This dispute over whether Gingko biloba, and more specifically TruNature Gingko, performs as advertised on the label goes to the heart of Plaintiff's case.  If Plaintiff cannot prove that the statements on the labels were false and that Gingko biloba has no benefit to memory or otherwise, the class claims will fail.  That the class may include non-injured individuals "merely highlights the possibility that an injurious course of conduct may sometimes fail to cause injury to certain class members. However, it fails to reveal a flaw that may defeat predominance, such as the existence of large numbers of class members who were never exposed to the challenged conduct to begin with." *Torres*, 835 F.3d at 1136.  "When, as here, the concern about the proposed class is . . . an alleged failure of proof as to an element of the plaintiffs' cause of action—courts should engage that question as a matter of summary judgment, not class certification." *Id.* at 1140 (quoting *Tyson Foods*, 136 S.Ct. at 1047).

11

class members may have learned about Gingko biloba or TruNature Gingko from other sources does not absolve Defendants from liability for false statements that appeared on the labels of the products purchased by the class members. *Mullins v. Premier Nutrition Corp.*, 2016 WL 1535057, at *3 ("How consumers first learned about Joint Juice—from a doctor, parent, Joe Montana, or the packaging—does not matter if 'they nonetheless decided to purchase the product only for its purported health benefits.'") (quoting *Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 512 (6th Cir. 2015)); *see also Ries*, 287 F.R.D. at 537 ("[V]ariation among class members in their motivation for purchasing the product, the factual circumstances behind their purchase, or the price that they paid does not defeat the relatively 'minimal' showing required to establish commonality.").

Defendants also argue that Plaintiff does not have a workable damages model. This argument reflects a misunderstanding of Plaintiff's claims. The TAC alleges, and Plaintiff argues, that TruNature Gingko has no value whatsoever and that any perceived benefits by consumers are merely the result of a placebo effect. If Plaintiff can prove that TruNature Gingko does not have any impact on brain health or memory and therefore does not perform as advertised on the labels and is worthless, the putative class will be entitled to restitution of the full amount they paid for the product. This full refund damages model, particularly considering Costco's records of purchases of TruNature Gingko, is entirely workable.

The cases on which Defendants' rely are distinguishable because they involve products that could provide some value to their purchasers even if they did not perform as advertised and for which it strains credulity to argue that no consumers would have purchased them if not for the allegedly false statement. This is the case with many food products, because if nothing else, they provide calories, hydration or good taste to the consumer. *See In re Pom Wonderful LLC*, No. ML 10-2199 DDP (RZx), 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014) (holding that the plaintiffs could not "plausibly contend that they did not receive any value at all from Defendant's' juice products."). It is also true for a product like a television where consumers value a variety of factors when

choosing which television to buy.  *See Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*, No. CV 14-7242-DMG (KSx), 2016 WL 5920345, at *7 (C.D. Cal. Jun. 23, 2016).  Unlike these other products, it is plausible to contend that no one would have purchased TruNature Gingko if not for the representations on the label, and that if the representations on the label are false, consumers who purchased TruNature Gingko did not receive any value and are entitled to a full refund of their purchase price.  In this regard, supplements like Gingko biloba are entirely distinct from food or televisions because consumers know generally the purpose of food and the function of a TV without reading a description on the label. Consumers do not necessarily know what benefit a supplement like Gingko biloba provides without reading the label.  Accordingly, any damages calculation issues are not an obstacle to class certification.

In sum, "[t]he Court finds that Plaintiff's full refund damages model matches h[er] theories of liability. Plaintiff claims that [Gingko biloba] is valueless, and Plaintiff has produced evidence that supports h[er] claim. If the finder of fact finds that [Gingko biloba] is in fact valueless then that justifies fully refunding the class for their purchases." *Lambert v. Nutraceutical Corp.*, No. CV 13-05942-AB (Ex), 2015 WL 12655388, at *4 (C.D. Cal. Feb. 20, 2015).

Because common questions that are subject to resolution using classwide proof predominate, the commonality and predominance requirements are met.

## F.    Superiority

"Rule 23(b)(3) requires that a class action be 'superior to other available methods for fairly and efficiently adjudicating the controversy,' and it specifically mandates that courts consider 'the likely difficulties in managing a class action.'" *Briseno*, 844 F.3d at 1128 (quoting Fed. R. Civ. P. 23(b)(3)(D)).  Defendants argue that a class action is not superior because Costco offers refunds without a receipt and that it would be easier to simply allow dissatisfied class members to obtain refunds from Costco.   However, as Plaintiff points out in her reply, allowing class members to obtain a refund is not an alternative to "adjudicating" whether Defendants are liable for material misrepresentations

on the labels of their products.  If it were, then Costco (and any retail store) could freely misrepresent the benefits of their products secure in the knowledge that their return policy effectively immunizes them from any suit seeking restitution.  Moreover, to require each absent class member to drive to a Costco store, wait in line, deal with an employee and ask for a relatively small refund is not superior to obtaining relief as a class.  Accordingly, the superiority requirement is satisfied.

## V.      Conclusion

For the foregoing reasons, the Court finds that: (a) the class is sufficiently numerous; (b) named plaintiff Tatiana Korolshteyn's claims are typical of the class and that she and her counsel will adequately represent the class; (c) common questions subject to classwide proof predominate; and (d) a class action is superior to other methods of adjudicating this controversy and will not be difficult to manage.  Accordingly, it is hereby **ORDERED** as follows:

1.      Plaintiff's motion for class certification [Doc. No. 105] is **GRANTED**.

2.      The following class is certified:

> All California consumers who, within the applicable statute of limitations, purchased TruNature Gingko Biloba with Vinpocetine until the date notice is disseminated.[3]

3.      Plaintiff Tatiana Korolshteyn is appointed as class representative.

4.      Plaintiff's counsel of record Bonnett, Fairbourn, Friedman, & Balint, P.C. and Boodell & Domanskis, LLC are appointed as class counsel.

5.      Defendants' motion to exclude Plaintiffs' expert testimony [Doc. No. 113] is **DENIED** without prejudice.

---

[3] The motion seeks certification of two classes, but they are defined identically.  The motion does not explain why a separate class for each claim is needed and the opposition does not distinguish between the two classes when arguing why the motion should be denied.  Presumably, the only reason for seeking certification of two identically defined classes is a difference in the statute of limitations between the two claims.  However, because the relief sought for each claim is identical, the Court is unclear why this distinction is needed.  In any event, this distinction is something that can be addressed, if needed, on any notice to the class.

6.   Plaintiff's motion to strike the declaration of Dr. Susan Mitmesser [Doc. No. 122] is **DENIED** without prejudice.

7.   Plaintiff's motion to strike the declaration and revised report of Dr. Edward Rosick [Doc. No. 125] is **DENIED** without prejudice.

8.   On or before **March 31, 2017**, class counsel shall meet and confer with defense counsel regarding the proposed method and form of class notice. Any agreed-upon notice shall be presented to the Court for approval no later than **April 7, 2017**. In the event the Parties cannot agree upon the form of the notice, each side shall file its proposal on **April 7, 2017**.

It is **SO ORDERED**

Dated:  March 16, 2017

Hon. Cathy Ann Bencivengo
United States District Judge

15